## BELL v. TOWELL.

1. A will, executed in 1857 by a testator who died in 1881, is governed by the provisions of the act of 1858 as modified in the General Statutes of 1872, and, therefore, passes after-acquired real property, the terms of the will being sufficiently comprehensive for that purpose.

2. In order to reach the true intention of a testator, his will should be read in the light of the circumstances surrounding him at its execution.

3. A testator directed the residue of the estate, after payment of debts, to be kept together on the place whereon testator then lived, and as his children (who were then minors) married or became of age, the executors were empowered to give off such property as they deemed necessary; the property given to the daughters to belong to them and their bodily heirs; if any daughter died and left no issue, the said property to be returned and divided among the other children; if the wife married, the whole estate was to be sold and divided between wife and children, share and share alike; and if the wife never married, at her death the whole estate was

to be sold and equal division made among the children. Before testator's death, the wife died, and all the children became of age and married. *Held*, that the power given to the executors lapsed and never went into operation.

4. That the direction for a division among his children, at the death of his widow, required a division at testator's death, the wife being then dead.

5. That the limitation to the bodily heirs of his daughters was intended to attach only to the property which it was contemplated might be given by the executors to the daughters, and did not attach to the proceeds of the sale ordered in the concluding part of the will.

6. While a will should be construed as a whole, the intention of testator cannot be declared to be the same in all its parts, unless so expressed.

7. A sale having been directed, a partition cannot be had except by consent of all parties.

Before COTHRAN, J., Edgefield, October, 1881.

This was an action by John M. Bell, as executor of George Bell, deceased, against Angeline M. Towell, Elizabeth R. Landrum, Henrietta M. Timmerman and Emily G. Shaw, commenced in September, 1881, for a construction of testator's will, which is copied in full in the opinion of this court.

The Circuit decree was as follows:

This action is submitted on the complaint and answer of defendants. The plaintiff asks for a construction of the will of his testator, and for a writ of partition of testator's real estate. The testator, George Bell, departed this life August 16th, 1881, leaving of force his last will and testament, the provisions of which are fully set forth in the complaint.

The testator's will bears date in the year 1857. Salome Bell, the wife of the testator, died soon after the date of testator's will, and many years before the death of testator. The will of testator was made when he resided on the Mine Creek Place described in the complaint. The testator removed from said place and resided elsewhere for several years before his death. He owned the Mine Creek Place and the Pinelands, described in the complaint, at the time that he made his will. The testator acquired all the rest of the real estate, described in the complaint, after the date of his will and after the death of his wife. The will is as follows: * * *

The first question that arises upon the construction of said will, is as to what estate the daughters take under the first provision of said will. The words are as follows: "The property that may be given to my daughters shall belong to them and their bodily heirs. If any one of my daughters shall die and leave no issue, then said property shall be returned back and divided among my other children or their children." The daughters takes a fee-conditional under these words of the will. If any of them die, leaving no issue, the shares of such go to the other children of testator or their children as purchasers.

The next question of importance in the construction of said will is, whether the shares of the daughters in the entire estate of the testator are subject to the provisions above stated; that is, whether their respective shares in the whole of said estate are to be held as a fee-conditional, and are subject to revert to testator's estate in case of their death, leaving no issue surviving them? Nothing was given off to any of the children of testator under the first provision of the will, nor was the estate kept together and managed as was contemplated by the second provision of the will. The testator survived his wife, and the latter never married, and the sale and division of the property upon her marriage or death, as provided by the second and third provisions, never took place. These two provisions of the will became inoperative, and the scheme of testator was defeated by the death of his wife. The first provision of the will applies to the property of testator owned by him at the date of the will, and the daughters take a fee-conditional in that part of the estate.

The testator died intestate as to all his after-acquired estate, real and personal; and this property acquired by him after the date of his will is divisible among his heirs-at-law under the statutes for the distribution of intestate estates, and does not pass under his will, and is not subject to any of the provisions thereof.

The Mine Creek and Pinelands places are subject to be divided equally between testator's children, the shares of the daughters therein to revert to the estate in case any of them die, leaving no issue. The other lands are divisible in equal shares

in fee among testator's heirs, who are his children, the plaintiff and defendants in this action. It is not necessary that said lands, and more particularly those which are herein adjudged to pass under the will, be sold if they can be fairly and equally divided. The personal estate of testator that was not kept on the Mine Creek Place is intestate property, and is divisible among testator's heirs-at-law. It is therefore ordered that a writ of partition be issued, &c.

From this decree all parties appealed.

*Messrs. Norris & Folk,* for plaintiff.

*Mr. James Aldrich,* for Mrs. Landrum, and *Messrs. H. W. Addison, Bettis & Wardlaw,* for the other defendants.

October 2d, 1882. The opinion of the court was delivered by MR. JUSTICE McGOWAN. George Bell departed this life August 16th, 1881, seized and possessed of a considerable estate, consisting for the most part of eight different tracts of land situate in the counties of Edgefield and Aiken. He left, surviving him, five children, one son, the plaintiff, and four daughters, the defendants. He left a will which had been executed as far back as 1857, when his wife Salome was alive, and his children were all minors, living in his family. At that time the testator owned only two tracts of land, the old homestead whereon the family resided, and an adjoining tract known as "the Pinelands." All the other tracts of land of which he died seized were acquired after the execution of his will. Soon after he made his will, Salome, his wife, for whom ample provision was made, died, and his children all grew up and married before his death in 1881. Upon that event, John M. Bell, one of the children, and the sole qualified executor, instituted these proceedings for construction of the will, which is as follows:

" *First.* After all my just debts are paid and discharged, the residue of my estate, real and personal, shall be kept together on the place whereon I now live; and as my children marry or

become of age, I empower my executrix and executors to give off such negroes and other property as they may deem necessary ; and the property that may be given to my daughters shall belong to them and their bodily heirs. If any one of my daughters shall die and leave no issue, then said property shall be returned back and divided among my other children or their children. My will also is, that my beloved wife Salome and children, viz., John M. Bell, Elizabeth R. Bell, Angeline M. Bell, Henrietta M. Bell and Emily G. Bell, shall remain, on the said plantation where I now live. My wife (Salome Bell) shall use the proceeds of the farm for the benefit and use of the family and herself; if there shall be anything left over the support of the estate, it shall be disposed of as the executrix and executors may think most advantageous to the estate. And if my beloved wife should marry, then my whole estate shall be sold and equally divided between my wife, Salome, and my five children named, share and share alike with all. If my wife never marries, then at her death my whole estate shall be sold and equal division made among my children. Likewise, I make, constitute and appoint my beloved wife, Salome Bell, John M. Bell and John Denny, executrix and executors of this my last will and testament."

The Circuit judge held that the property owned by the testator in 1857, when he executed his will, alone passed under it ; that, by the terms of the first paragraph, the daughters respectively took a life estate in their shares of that property, with limitation over to their brother and sisters " if they should die and leave no issue." But that all the property acquired by the testator, after the execution of his will, did not pass thereunder, but was intestate and subject to division under the statute of distributions in fee-simple, and ordered a writ of partition to issue for that purpose.

All the parties filed exceptions upon appeal to this court. John M. Bell and Mrs. Landrum insist that all the property owned by the testator at the time of his death passed under his will, and that the limitation attached to the property, which the executors were empowered to give off to the children in the lifetime of Mrs. Bell, should be held as applicable also to the shares

of the daughters in the whole estate. And the other daughters, whilst agreeing that all the property owned by the testator at the time of his death passed under his will, insist that by proper construction of the will all the property should be sold and equally divided among the children without limitation, according to the terms of the last paragraph, which has no connection with the other parts of the will.

The first question is, whether the will is to be considered as disposing only of the other property which was owned by the testator at the time of its execution, or as speaking at the time of his death. At common law, a will of personal property was ambulatory, taking effect only at the death, and, as a consequence, disposed of all property then possessed by the testator, without regard to the fact whether it was acquired before or after its execution, only provided the terms of the will were sufficient to cover such property; but, for reasons which it is unnecessary to state here, the rule was different as to real property, as to which the will only disposed of that which was owned by the testator at the time of its execution.

In 1791, it was enacted "that no lands or personal estate, which shall be acquired by any person after the making of his or her will, shall pass thereby (unless the said will shall be republished); but every such person shall be considered as having died intestate as to said lands and personal estate." 5 *Stat.* 163. In 1808, an act was passed which declared, "That any person acquiring personal property after making his will shall not be considered as having died intestate as to such personal property." 5 *Stat.* 573. In 1858, it was enacted " That real estate purchased or otherwise acquired after the making and publishing last wills and testaments shall pass by and under the same, in the same manner and to the same extent as personal estate now passes." 12 *Stat.* 700. In 1872, the previous acts upon the subject were repealed; but, at the same time, a provision as to after-acquired property, both real and personal, was adopted in the following words: " Land and personal property which shall be purchased or otherwise acquired by a person after the making of his or her will, shall pass thereby, and no one shall be considered as having died

intestate as to said lands and personal estate." *Gen. Stat.* 440.

This law is perfectly clear as to all wills executed after its adoption; but the question is made, whether it should apply to wills executed before that time. It will be observed that the common law was restored as to personal property before this will was executed, and, therefore, as to that kind of property, there can be no question here. But the repeal of the act of 1791, as to real property, did not take place until 1858, a year after this will was executed, and it is contended that, as to the lands, the will must be governed by the act of 1791.

The testator did not die until the year 1881. His will, from its nature, could not take effect until that time, and falls under the operation of the law then of force, which declares " that lands and personal property acquired by any person after making his or her will, shall pass thereby, and no person shall be considered as having died intestate as to said lands and personal estate." It has been held that this embraces wills executed before as well as after the passage of the act, provided only the testator died after that time, and the terms of the will are broad enough to cover such property. *Means* v. *Means,* 4 *Desaus.* 243; *Jarm. Wills* 146, *note.*

There can be no doubt that the terms of this will are sufficient to cover all the property of which the testator died seized and possessed. The property is not particularly described, but is spoken of in general terms which are as applicable to property acquired after the execution of the will as to that owned at that time. It speaks of " the residue of my estate, real and personal," after his debts were paid, " the whole of my estate," &c. There is nothing in the will which indicates that the testator intended to limit its operation to the property owned by him at its date. "A residuary clause of all the testator's property of every kind and description whatever, covers all his interest in real estate otherwise undisposed of by the will, whether such interest be vested or future, contingent or reversionary." *Williams* v. *Kibler,* 10 *S. C.* 414; *Scaife* v. *Thomson,* 15 *S. C.* 358.

As the will covers and disposes of the whole estate, what is the proper construction of it? The paper is most unskillfully drawn. It is short and obscure, if not inconsistent, in its differ-

ent parts. The difficulty of giving it satisfactory construction is increased by the fact that it was made more than twenty years before the death of the testator, when the property and the beneficiaries under it were in a very different condition from what they are now. In construing a will the leading object should be to discover the intention of the testator in the state of facts which have actually occurred, and to reach that intention it is necessary to read the will in the light of the circumstances surrounding the testator at the time it was made.

At the time this will was executed, Salome, the wife of the testator, was living and his children were all minors still in his family. He seemed to assume throughout that his wife would survive him, and her welfare during life and that of the young children during the period of nurture were manifestly the first objects of his bounty. He directed that his property should be kept together for the benefit of his wife and children during the life or widowhood of his wife, and in that view he empowered her, as executrix, and the other executors to give off to the children as they married or came of age, "such negroes and other property as they might deem necessary," declaring that "the property that may be given off to my daughters shall belong to them and their bodily heirs. If any of my daughters shall die and leave no issue, then said property shall be returned back and divided among my other children or their children." But the state of facts here provided for never actually occurred. Salome died long before the testator, and the children all grew up and married before his death. The power of the executors to give off property under this paragraph lapsed by the death of Salome and never went into operation.

The testator next provided for the possible case of his wife marrying again, but that never occurred, and the provision made to take effect in that event need not be considered. Finally, he directed that if his wife should never marry again, then, at her death, the whole estate should be sold and equal division made among his children. This event has occurred, except that, contrary to his expectations, her death occurred in his lifetime, the effect of which was to destroy the provision made for the wife and to postpone the operation of so much as related to the chil-

dren until his own death, as the will could not take effect until
that time. "It may be stated, as a general rule, that when the
gift is to a designated individual, with a gift over in the event
of his dying without having attained a certain age, or under a
certain age, or under any other prescribed circumstances, and the
event happens in testator's lifetime, *the ulterior gift takes effect
immediately on testator's decease,* as a simple, absolute gift." 3
*Jarm. Wills* 618, *note; Williams Exec.* 1318; *Dunlap* v. *Dunlap,* 4 *Desaus.* 305.

In the last case cited, it is said: "It is certainly a general
rule that if the legatee dies before the testator, the legacy shall
be lapsed and sunk into the residuum of the testator's personal
estate, although the legacy may be given to the legatee, his
heirs, executors, administrators and assigns. But there are vari-
ous exceptions to this rule, and, amongst others, one exception
is, when the legacy is given over to others, after the death of
the first legatee, for in such case the legatee in remainder shall
have it immediately." The last paragraph of the will is opera-
tive as if Salome had survived her husband and died unmarried
immediately after.

If Salome had survived her husband, and the executors had
given off property to the children, it is at least doubtful even in
that case (as none of the children died "without issue" in her
lifetime), whether the words of the will were sufficient to create
a good limitation over in that property, but without considering
that question, we do not think that we are at liberty to take the
words of limitation from the context in which they appear and
transfer them to the last paragraph, which simply requires that
upon the death of Salome all the property shall be sold and
equal division made among the children.

It is true that in seeking after the intention of the testator, all
parts of a will should be construed in relation to each other, so
as, if possible, to form one consistent whole, but when the several
parts of a will undertake to provide, each for a different state of
facts, it cannot be affirmed, in the absence of any such expression,
that his intention was the same in all the cases. Under such
circumstances, we cannot venture to take part of a provision
made for one state of facts, and interpolate it upon another pro-

vision made for a state of facts entirely different. It may be possible, but we cannot hold that it was the intention of the testator, to limit over the property directed by the last paragraph to be sold and equally divided among the children. The words of limitation, by their place in the will, and the manner in which they are stated, indicate that they were intended to apply to the property which the testator understood might be given off under the first paragraph, which never went into effect. If the testator intended that the limitation should apply to the property to be taken in the final division, he should have so said, and in that case he would probably have directed the property itself divided, instead of ordering it to be sold and the proceeds divided.

The whole estate passes under the will and must be administered according to the last paragraph, without regard to the words of limitation used in connection with the property which it was contemplated might be given off to the children by the executors under the first but inoperative paragraph of the will.

As the will positively directs a sale, the property itself cannot be partitioned except by consent of all parties.

The judgment of this court is that the judgment of the Circuit Court be modified according to the principles and conclusions herein announced.