### CUNINGHAM v. CUNINGHAM.

1. A testator, by the second clause of his will, gave certain lands and slaves to his widow for life, with remainder to his son and daughter should they both survive their mother; by the third clause, other lands and slaves to his daughter for life, with remainder to his son; and by the fifth clause, the balance of his lands and slaves to be equally divided between his widow, his son and his daughter, "the shares of my wife and daughter in said lands and slaves to be held subject to the same trusts and limitations as are provided in the second and third clauses of this will." *Held*, that upon the death of the widow, the two children surviving, the daughter took an absolute estate in the lands devised to the widow for life in the second and fifth clauses of the will.

---

* This completes the cases heard at April Term, 1883.—REPORTER.

2. And under this daughter's will, whereby she devised all the property she held in her own right at the time of her death, her devisee took her interest in said lands of the widow.

3. There being no latent ambiguity in either of these wills, extrinsic evidence cannot be received to show intentions not expressed in the wills themselves.

4. The court may relieve a party from his contract entered into under a mistake of fact, but not generally where it is made under a mistake of law. *Quære:* Is there any reason now for a distinction between mistake of law and ignorance of law?

5. A woman having, with her brother, a joint estate in a tract of land under her father's will, but believing that she had only a life-interest in a moiety with remainder to her brother, conveyed to him in fee her interest in one-half of the tract after division, and took from him a conveyance of his interest in the other half for the term of her natural life. *Held,* that there was no ground for reforming these deeds, and that after the sister's death, one-half of the part taken by her in the division remained the absolute property of her brother, and the other half passed under her will to her devisee.

6. The acceptance by the sister of the deed to a life-interest only did not estop her devisee from claiming that she retained a fee-simple estate in her moiety of the land which was taken by her at the division.

---

Before WITHERSPOON, J., Laurens, February, 1883.

Hon. T. B. Fraser, Circuit judge, sat in the place of the chief justice, who had given an opinion in the case while at the bar. This case is fully stated in the Circuit decree, which was as follows:

Robert Cuningham died in Laurens county, in 1859, leaving in force his last will and testament, and leaving surviving him, his widow Louisa, his son John, the defendant, and his daughter Pamela, referred to in the pleading and testimony as Ann Pamela. The widow, son and daughter were nominated executor and executrixes of said will. The main issue in the above action involves a proper construction of the second, third and fifth clauses of the will of Robert Cuningham, as follows:

"Second. As I have heretofore given to my son, John Cuningham, one thousand acres of land and forty-five slaves, with stock and other personalty, I now give to my beloved wife, Louisa Cuningham, during her natural life, one thousand acres of land, to be laid off so as to include my homestead and forty-five slaves; also, one-half of my stock of every description, and one-half of my household and kitchen furniture, wagons, planta-

tion tools, and so forth, which may be necessary for carrying on a farm, and at her death the said land, slaves and their increase, and other property to be equally divided between my son, John Cuningham, and my daughter, Pamela Cuningham, should they both survive their mother, and if not, then to the survivor, provided, however, that should either or both of them die before their mother, having issue living, such issue shall take and receive the share to which their parents would have been entitled if living.

"Third. I give and bequeath to my daughter, Pamela Cuningham, my Dry Fork tract of land containing one thousand acres of land and forty-five slaves, together with the remaining half of my stock, household and kitchen furniture, wagons, plantation tools, and other articles necessary to the conducting of a farm; but should my said daughter die without issue living at her death, then it is my will that the same lands, slaves, and other property shall go to my son, John Cuningham, should he survive his sister, and if not, to such issue as he may have living at the death of my daughter.

"Fifth. It is my will that the balance of my land and slaves be equally divided between my wife, son and daughter; the land to be so laid off to them in such manner as may be most beneficial and convenient to the several tracts before given to them respectively. The shares of my wife and daughter in said lands and slaves to be held subject to the same trusts and limitations as are provided in the second and third clauses of this will." In a division of the balance of testator's land, under the fifth clause, 627 acres were allotted the widow, and a similar number of acres to the son and daughter respectively.*

Testator's widow, Louisa, died intestate, October 6th, 1873, leaving surviving her the defendant, her son John, and her daughter Pamela, the latter never having married. It appears that testator, before his death, disposed of the Dry Fork plantation devised to his daughter Pamela in the third clause of his will. After testator's death the defendant, John Cuningham, sold and conveyed to the widow and Pamela 785 acres of the land given him by his father. The widow, before her death,

---

* It was conceded that Ann Pamela held this 627 acres only for her life.

conveyed to Pamela her half interest, and Pamela thereby became seized and possessed of the 785 acres tract of land of which she died seized and possessed. Testator, in the sixth clause of his will, authorized his wife and children to select their own mode of making division.

After the death of the widow, Louisa, the defendant and his sister, Pamela, selected three citizens of Laurens county to divide between them the 1,627 acres devised and allotted to the widow for life. These commissioners, so selected, divided said land by allotting to defendant, John, 867 acres thereof, and to Pamela the balance of 760 acres, including the homestead. In January, 1875, defendant and his sister, Pamela, mutually selected their cousin, the Hon. B. C. Yancey, to draw deeds of conveyance to the tracts respectively allotted to be interchanged between them. Mr. Yancey drew the deeds, each reciting the provisions of Robert Cuningham's will, in the event that defendant and Pamela survived their mother. The deed so drawn and executed by Pamela to the defendant conveyed all of her interest in law and equity under her father's will to the 867 acres, whilst the deed from defendant to Pamela conveyed his interest in the balance of 760 acres for life only, under his father's will.

After said interchange of deeds in said division, on May 1st, 1875, Pamela Cuningham died, never having married, leaving of force her last will and testament, dated April 13th, 1871, wherein she gives (bequeaths) to her nephew, Clarence, the plaintiff (who is a son of defendant) "all of the property which I hold in my own right at the time of my death," subject to payment of certain legacies. Edward Noble qualified as executor of her will. After the death of his sister, about January 1st, 1876, the defendant, claiming as remainderman, under his father's will, and in accordance with his deed to his sister, on the division aforesaid, took possession of the 760 acres of land, and has ever since occupied and cultivated said tract of land.

On July 24th, 1882, the plaintiff, as devisee under the will of his aunt, Pamela Cuningham, brought the above-entitled action, alleging that under the will of his grandfather, Robert Cuningham, as devisee of Pamela he is entitled to the one-half in fee of the life-estate of Louisa, the widow of Robert Cuningham.

Plaintiff prays that the deed from defendant to Pamela for 760 acres in the division aforesaid may be reformed on the ground of mistake, error and inadvertence, so as to pass the fee instead of a life-estate, and that defendant be required to surrender to plaintiff said 760 acres of land, and that he account to plaintiff for rents and profits since January 1st, 1876.* The plaintiff also demands that defendant do account for the personal property of the life-estate of the widow that went into his possession. The defendant insists that his sister, Pamela, took but a life-estate under the will of Robert Cuningham; but even if he should be mistaken in this view, that the court will not now open the settlements made between himself and sister, Pamela, and pleads the statute of limitations and *laches* as a bar to the relief demanded by plaintiff. It was referred to the master to take testimony in regard to all the issues of fact, and report the same to the court.

As the defendant and his sister, Pamela, both survived the widow, I must conclude and decide that upon the death of the widow they each took a fee in one-half of the 1,000 acres of land devised the widow for life under the second clause of Robert Cuningham's will. The interest or estate of Pamela in the additional 627 acres allotted to the widow depends upon the construction of the fifth clause of said will. In the fifth clause, testator directs that the shares of the wife and daughter in the balance of the lands and slaves therein devised, " be held subject to the same trusts and limitations as provided in the second and third clauses of this will." It will be observed that the provision made by testator for his wife and daughter, as well as the limitations in the second and third clauses, are separate and distinct. It seems to me that the trust and limitations imposed by testator in the fifth clause must be referred to and construed in connection with the provision made for wife and daughter respectively in said second and third clauses. The widow certainly took the 627 additional acres of land allotted to her of the remaining lands devised under the fifth clause, upon the same

---

* Or else that the entire life-estate of Mrs. Louisa Cuningham be partitioned between the plaintiff and defendant.—REPORTER.

V

limitation that attached to the devise of the 1,000 acres in the second clause. The defendant and Pamela both surviving the widow, I must conclude and decide that they were each entitled to a fee in the one-half of the 1,627 acres of land devised and allotted to the widow for life. This construction gives effect to each and every clause of testator's will, and is consistent with the intent as deduced from the words of the will.

Having concluded that the fee to one-half of the 1,627 acres was in Pamela, is the plaintiff, as devisee, entitled to have the settlement in January, 1875, between defendant and Pamela, opened? So far as the conveyance from defendant to Pamela of the 760 acres is concerned, no question has been made as to the right of the plaintiff to bring this action. The plaintiff bases his claim for relief upon the ground that Pamela, in said division or settlement, accepted the deed from defendant for life by mistake, error and inadvertence. There is neither allegation nor proof that defendant was guilty of fraud, misrepresentation or concealment in the division of the mother's life-estate between himself and his sister, Pamela. It appears that the defendant was not present when Mr. Yancey drew the deeds to be interchanged in this settlement, he having been detained at that time in Brooklyn by sickness.

The authorities draw a distinction between ignorance of law and a mistake at law. Where a party acts in ignorance of law, he is passive, and does not presume to reason. As ignorance cannot be proved, the courts cannot relieve on account of such ignorance. Mistake at law, however, is susceptible of proof, and the court will afford relief where such mistake is palpable or clearly established. In the cases of *Lawrence* v. *Beaubien,* 2 *Bailey* 623; *Lowndes* v. *Chisolm,* 2 *McCord Ch.* 463, and *Executors of Hopkins* v. *Mazyck,* 1 *Hill Ch.* 250, relief was granted where the party acted upon the erroneous advice of counsel. In the case of *Keitt* v. *Andrews,* 4 *Rich. Eq.* 349, it was held that where an executor and legatee honestly misconstrued the will, and had a settlement based upon such misconstruction, the court would not open the settlement. In that case it was held that ignorance of law or error of judgment does not afford ground for relief.

The testimony does not disclose the motive that prompted Pamela, at the time of the settlement, to accept from defendant the conveyance of the 760 acres of land for life. It cannot be determined satisfactorily from the testimony whether Pamela then acted upon the erroneous advice of counsel as to her right under her father's will, or upon her own erroneous misconstruction of her rights under said will. Mr. Yancey testifies that Pamela did not ask him to construe her father's will for her at the time he drew the deeds. He states that her mind was not impaired; that he conferred with Pamela as to the deeds, and she approved of the deed for 760 acres he drew for the defendant to sign. G. W. Calhoun, a witness for the defense, testified on cross-examination, without objection, that he had heard Pamela say that counsel had advised her that she took only a life-interest under her father's will, but the witness did not fix the time of such conversation. Mr. Yancey testifies that he heard Pamela express dissatisfaction with the provisions of her father's will, but this was before the settlement; and this witness testifies that he did not know that Pamela ever advised with counsel as to her rights under her father's will.

The recitals in the deeds between the parties, as well as the terms employed by Pamela in devising to plaintiff "all the property she held in her own right at the time of her death," indicate that both defendant and Pamela, in said settlement, acted upon a misconstruction of the rights of Pamela under the will of Robert Cuningham. Whether such misconstruction was the result of Pamela's erroneous judgment, or the erroneous judgment of counsel, does not satisfactorily appear from the testimony. I am, therefore, constrained to conclude and decide that plaintiff has failed to establish, at the time of settlement, such a mistake at law as would entitle him to have said settlement opened, or the deed from defendant for the 760 acres to Pamela for life reformed, as demanded in his complaint.

Under the deeds of settlement between defendant and Pamela, whilst Pamela has released and conveyed to the defendant the fee to which she is held to have been entitled in one-half of the 867 acres, the defendant being entitled to the fee in the balance or other half of the 867 acres, it does not appear that, in said

settlement, the said Pamela ever released or conveyed to defendant the fee in the one-half of the 760 acres to which she was entitled. The plaintiff, as devisee, must be held entitled to the fee in the one-half of the 760 acres retained by Pamela, and not released or conveyed by her in said settlement with the defendant.

As the settlement between defendant and his sister appears to have been made in good faith under a mutual misconstruction of their father's will, and defendant took possession of the 760 acres of land after his sister's death under said misconstruction, I conclude and decide that defendant should only account to plaintiff for the one-half of the rents and profits of said land from July 24th, 1882, the date of the commencement of plaintiff's action. *Scaife* v. *Thomson,* 15 *S. C.* 368.

The widow died October 6th, 1873, and her daughter, Pamela, administered on her estate. The testimony does not sustain plaintiff's demand against defendant for an accounting of the life-estate of the widow alleged to have gone into defendant's possession. The plea of the statute of limitations, however, must be held to bar plaintiff's right to require such accounting.

It is ordered and adjudged that plaintiff, as devisee of Pamela Cuningham, and the defendant, are each entitled to the fee in one-half of the 760 acres of land embraced in deed from defendant to Pamela Cuningham, January 9th, 1875, and that a writ do issue to divide and partition said tract of land between plaintiff and defendant, allotting to each the one-half thereof in value. It is further ordered and adjudged that defendant do account to plaintiff before C. D. Barksdale, master for Laurens county, for the one-half of the rents and profits of said 760 acres of land from July 24th, 1882, and that it be referred to said master to ascertain and report to the court the amount of rents and profits ascertained to be due plaintiff under this decree. It is further ordered and adjudged that plaintiff is not entitled to the relief demanded in his complaint, except as hereinbefore ordered, adjudged and decreed.

The plaintiff appealed from this decree on the following grounds:

1. "Because his Honor held that the plaintiff, as the devisee of Miss Ann Pamela Cuningham, was barred from claiming one-half of the 867 acres of land conveyed in fee by said Miss Cuningham to the defendant, who, in consideration therefor, took a conveyance from the defendant of a life-estate in 760 acres, said interchanged deeds having been executed, as plaintiff alleged, under a palpable mistake of law in regard to their rights under the will of their father, Robert Cuningham. Said allegation of mistake, it is respectfully submitted, was supported by proof clearly establishing the mistake.

2. "Because his Honor erred in not holding and decreeing that said interchanged deeds, dividing 1,627 acres, were executed under a palpable mistake of law in construing the will of said Robert Cuningham, and should be set aside, said will devising in fee, in remainder, 1,627 acres between defendant and the said Miss Cuningham, at the death of their mother, Mrs. Louisa Cuningham, who had a life-estate therein.

3. "Because his Honor, it is respectfully submitted, erred in holding that the proof submitted did not clearly establish a palpable mistake of law on the part of said Miss Cuningham, plaintiff's devisor, induced, according to the uncontradicted proof, by the erroneous legal advice of eminent counsel, given at her solicitation, but for which advice, inducing the mistake, she would never have been a party to the interchanged deeds.

4. "Because his Honor should have granted one or the other of plaintiff's prayers, either to have decreed the deed for 760 acres be reformed, so as to give a fee instead of a life-estate to plaintiff's devisor, or to have set aside both deeds and ordered a partition of the 1,627 acres equally between the plaintiff, as devisee, and the defendant, according to the will of the said Robert Cuningham."

The defendant appealed on the following grounds:

I. "Because his Honor erred in holding that the testatrix, Pamela Cuningham, had a fee-simple interest in any portion of the 1,627 acres of land.

II. "Because his Honor erred in not holding that she had elected to take a life-interest in the 760 acres of land, and that

the plaintiff is bound by said election, and is estopped from claiming what his testatrix acquiesced in and did not set up any title to.

III. "Because his Honor erred in holding that Pamela Cuningham died testate as to the 760 acres of land or any portion thereof.

IV. "Because his Honor erred in disregarding the testimony which showed that Robert Cuningham, by his own construction of his will, designed thereby only a life-estate for Pamela Cuningham in any of his property, and that Pamela and John Cuningham so thus understood the scheme or meaning of that will, and acted upon that construction.

V. "Because his Honor erred in excluding or disregarding the testimony of G. W. Calhoun, which proved that Pamela Cunningham had not, in her will, intended, and never intended, to devise to plaintiff any estate or interest in the land held by her mother for life.

VI. "Because his Honor erred in stating or ruling that no objection had been taken by defendant to plaintiff's right to bring this action.

VII. "Because his Honor erred in not holding that the settlement or division between the defendant and Pamela Cuningham was a quit-claim to, and surrender of, any estate, except for life, in the 760 acres of land to John Cuningham."

*Mr. Edward Noble,* for plaintiff.

Miss Cuningham took a fee-simple in remainder in the lands given to her mother for life by Robert Cuningham's will. Parol evidence is inadmissible to show testator's intention. 5 *Rich. Eq.* 107; 15 *S. C.* 357. The interchanged deeds of January, 1875, do not estop plaintiff from claiming the fee. 3 *Bl. Com.* 308; 13 *S. C.* 370; 15 *S. C.* 352, 362; 2 *Bail.* 649; 2 *McCord Ch.* 455. Testatrix did not die intestate as to the 760 acres, her will covering all of her estate, and this being a portion of her estate. The interchanged deeds, having been executed under a palpable mistake of law, induced by the erroneous advice of counsel, should be reformed or set aside. 2 *McCord Ch.* 463; 2 *Bail.*

623; *Mosely* 364; 1 *Hill Ch.* 250; 1 *Story Eq. Jur.*, §§ 110, 137, 165. In *Keitt* v. *Andrews*, 4 *Rich. Eq.* 349, there was ignorance of law, not mistake. See 1 *Desaus.* 437; 4 *Id.* 122; 1 *Bail. Eq.* 343.

*Mr. Benjamin D. Cuningham*, for defendant.

The clauses of a will should not be construed technically and alone, but rather the scheme of the whole will and the evident intention of testator should be regarded. 2 *Bay* 255; 12 *Johns.* 289; 1 *Nott & McC.* 69; 2 *McCord Ch.* 307; 1 *Desaus.* 131; 2 *Id.* 450; 2 *Jarm. Wills* 741; 15 *S. C.* 337; 3 *Strobh. Eq.* 222. The intention of testator may be gathered from the circumstances surrounding him when he wrote his will. 15 *S. C.* 356; 18 *Id.* 101; 3 *Jarm. Wills* 794; 6 *Rich. Eq.* 85. The terms of the interchanged deeds show an election by Ann Pamela to take only a life-interest in the 760 acres. 3 *Washb. Real Prop.* 99, 119; *Big. Estop.* 347, 287, 293 *et al.;* 1 *Lead. Cas. Eq.* (*H. & W.'s notes*) *233, *249, *250; 2 *Spenc. Eq. Jur.* 600; 2 *Ves. Sr.* 593. The settlement between John and Pamela operated as a quit-claim to John, and a surrender of any estate except in the 760 acres, and there was no such mistake as can be corrected by the court. 2 *Bail.* 623; 2 *McCord Ch.* 463; 1 *Hill Ch.* 250; 4 *Rich. Eq.* 349; 3 *Washb. Real Prop.* 356, 366, 380; 1 *Id.* 552; 2 *Wait Ac. & Def.* 504; 5 *Id.* 437; 2 *Strobh. Eq.* 153; 2 *S. C.* 108; 4 *Rich. Eq.* 354; *Bail. Eq.* 154.

*Mr. John Cuningham*, same side.

February 1st, 1884. The opinion of the court was delivered by

MR. JUSTICE FRASER. [Statement of facts is omitted, as it has been already fully given in the Circuit decree.] None of the grounds of appeal bring up for the consideration of this court any questions concerning the personal property included in the life-estate of Mrs. Cuningham, or as to the order for account of the rents and profits, and these matters need not be referred to. The only questions which remain are those affecting the

title of the 867 acres and the 760 acres of land.    They are as follows :

1. What is the proper construction of the second, third and fifth clauses of the will of Robert Cuningham?

2. What is the proper construction of the will of Pamela Cuningham, and what interest did plaintiff take under it in this land, if any?

3. Is it competent to use parol or any extrinsic evidence to control or aid in the construction of these wills, as to the matter before the court?

4. Did Pamela or John Cuningham, or either of them, in making the division of the land, in January, 1875, act in ignorance or under a mistake of law as to what were their rights in the land covered by their deeds of that date?

5. Was there any ignorance or mistake which is a ground of relief in this court?

6. Is Clarence Cuningham, as devisee of Pamela Cuningham, estopped from setting up any claim to the fee in consequence of her accepting a conveyance for life only in the 760 acres from John Cuningham?

When John Cuningham survived his mother, Louisa, who died in 1873, it can scarcely admit of a doubt that he took under the second clause of Robert Cuningham's will a fee in one-half of the 1,000 acres of land given to her for life.    The only contingency in reference to his interest at her death was as to his having died before her, in which event his issue, if any, were substituted in his place to his share.    Precisely the same words are used as to Pamela, and, having survived her mother, she took also a fee in remainder.    Upon the words of the will itself, the matter is too plain for argument.    Whether parol or extrinsic evidence of any kind can control this will be considered hereafter.    The wife and daughter, however, each received in the division, under the fifth clause, 627 acres of land " subject to the same trusts and limitations as are provided in the second and third clauses."    Now, in the second clause, the life-estate is in the widow, and the period of distribution is her death, and then to the survivor of John and Pamela, or both, if they both survive, the issue of either who had died in her life-time to be substituted.

In the third clause, the life-estate is in Pamela, and at her death without issue the property goes to John if living, and if not to his issue.

The construction which would hold Pamela's share under the fifth clause subject to the limitations in the second, or the widow's share under that clause subject to the limitations under the third, would lead to such confusion in construction as would make it impossible to carry out the will. It would not be possible, on this construction, to say at what period the fee, as to a part of it at least, became vested in John Cuningham, and the right of his children or issue to be substituted in his place lost. The only view which seems clear of difficulties is, that the widow and daughter took under the fifth clause, subject to the trusts and limitations as to them respectively in the second and third; and that the 627 acres was held by the widow in the same way as the 1,000 acres under the second clause; and as John and Pamela both survived her, they each took a fee in one moiety thereof. So much for the will itself.

The next question of construction is as to what passed to Clarence Cuningham under the will of Ann Pamela Cuningham. The words of the will are very comprehensive by which the testatrix gave her property to the plaintiff: "All the property which I hold in my own right at the time of my death." A will now speaks at the death, as well to realty as to personalty, and as if to provide against any doubt as to what was intended, the time of her death, and not the date of the will, or even of the codicil, is chosen as the period to which is referred the ownership of the property intended to be covered by the terms of the will. These words cover everything, and would cover even after-acquired property as well as property in which, as in the land here in question, the testatrix had a contingent interest—an interest in her own right, if the contingency happened, as it did.

Is there anything in either of these wills as to the matters before the court to justify a resort to parol or extrinsic evidence? It might not be amiss to refer to some of the authorities on this subject. We find in the general rule of construction laid down by *Jarm. Wills*, (vol. III., p. 705,) the following rule: "That extrinsic evidence is not admissible to alter, detract from or add

to the terms of a will (though it may be used to rebut a result-
ing trust, attaching to a legal title created by it, or to remove a
latent ambiguity) arising from words equally descriptive of two
or more subjects or objects of gift." We find the same rule sub-
stantially in *Abbott's Trial Evidence*, § 105, where there is an
" equivocal designation of the beneficiary," or "A similar ambi-
guity as to the property given." "And it cannot be made admissible
even by showing that the testator did not own the parcel desig-
nated in the will, and did own another, and that the draftsman
made the mistake." *Id.*, § 102.

The rule is laid down in *Wigr. & O'H. Wills* 14, in these
words: " Where the object of the testator's bounty, or the sub-
ject of disposition, (*i. e.* person or thing intended,) is described
in terms applicable indifferently to more than one person or
thing, evidence is admissible to prove which of the persons or
things so described was intended by the testator." This kind of
evidence can be admitted when it " merely tends to explain and
apply what the testator has written, and no evidence can be
admitted which merely shows what he intended to write."
*McCall* v. *McCall*, 4 *Rich. Eq.* 455, quoted, approved and
applied in *Scaife* v. *Thomson*, 15 *S. C.* 357. There can be no
doubt as to what persons were intended in either of these wills,
or what property is covered by the language used. There is no
latent ambiguity which calls for extrinsic evidence as to either
the persons or property, and the conclusions reached as to the
proper construction of the wills themselves cannot be controlled
by any testimony which has been offered as to any intentions not
expressed in the wills themselves.

It may be admitted, for the purposes of this case, that John
and Pamela Cuningham were ignorant, or fell into a common
error, as to their rights under the will of Robert Cuningham;
and that the deeds of January, 1875, were executed by them
under an impression that Pamela had only a life-estate in one-
half of the 1,627 acres. It is more than probable that they
reached this conclusion from what they knew of the wishes and
general purposes of their father from himself, and not from any
careful or critical examination of the terms of the will itself.

This court concurs with the Circuit judge, upon a careful

consideration of the testimony, in his conclusion that there was no mistake of law, as contradistinguished from ignorance of law. There does not appear in the testimony anything which goes to show that any person ever told Pamela that she had only a life-estate in the moiety of this land, and there is certainly no evidence that she ever submitted this will for a construction as to her rights under it to any one of the distinguished gentlemen* with whom it is said she conversed on this subject. It is more reasonable to think that, in a matter to the mind of this court so plain, they conversed or even advised with her on her own assumed construction of the will than construed it for her. She was a lady; though of feeble body, yet of well-matured intellect, of unusual intelligence and national reputation. Even Mr. Yancey, who drew the deeds of January, 1875, got his impressions from her, and, in his testimony in this case, says: " I was impressed with the belief that the widow and daughter took under the will only life-estates, derived from their statements or belief." Even at the time of this division he does not seem to have construed the will for her, and seems to indicate that, if there was anything for him to construe, he would have declined to act. If there was any error it was her own.

If the mistake in this transaction had been one of fact, without any improper negligence on her part, all the authorities agree that the court could give relief if application be made in due time. A mistake of law stands, however, on a different footing. Facts, material facts, are often in the knowledge of only one of the parties, sometimes known to neither, and either inaccessible or carefully concealed. It is presumed that every one knows the law, and for the very good reason that the source of information is open for all equally. It is true, that questions of law are sometimes doubtful. Lawyers, and even courts, differ about them; but there is no unfairness, and nothing unreasonable in requiring parties in ordinary cases to take these with all the other inevitable risks of human life when they stand on equal footing with their fellows.

---

* These were David Paul Brown, of Philadelphia; James L. Petigru, Henry C. Young and B. F. Perry, of South Carolina.—REPORTER.

The case before the court does not call for any attempt to define the rule by which relief can be granted on account of mistake of law. Mr. Justice Story, in his work on Equity Jurisprudence, (vol. I., § 138,) says that " it may ' be safely affirmed upon the highest authority, as well-established doctrine, that the mere naked mistake of law, unattended with any such special circumstances as have been suggested, will furnish no ground for the interference of the Court of Equity, and the present disposition of the court is to narrow rather than enlarge the operation of the exceptions." The cases involving special circumstances are referred to in some of the preceding sections; but no general principle is deducible from them. Not more satisfactory is the elaborate collection of the cases and discussion of this subject in the note to *Blush* v. *Ward,* 15 *Am. Rep.* 171, or the rule suggested by Mr. Pomeroy in his valuable work on Equity Jurisprudence, vol. II., § 849.

In this State, however, the distinction has been sharply drawn between ignorance of law and mistake of law. In *Lawrence* v. *Beaubien,* 2 *Bail.* 623, and in *Lowndes* v. *Chisolm,* 2 *McCord Ch.* 455, the court holding that in cases of mistake, the court could give relief, and that it would be refused in cases of mere ignorance. The principal reason given being that mistake could be proved and that ignorance could not. As parties can now testify in their own behalf, it may be doubtful if this reason can be longer sufficient to justify the distinction. In *Hopkins* v. *Mazyck,* the Court of Appeals, in affirming the Circuit decree, takes occasion to put its judgment on another ground, and to re-affirm the doctrine in *Lawrence* v. *Beaubien* and *Lowndes* v. *Chisolm,* on which the chancellor had cast some doubt in the Circuit decree. The court, however, has never held that even a mistake in law stands in all cases on the same footing as a mistake of fact. And nowhere have any limitations been laid down capable of general application.

In *Keitt* v. *Andrews,* 4 *Rich. Eq.* 349, Chancellor Dargan, in the Circuit decree, which was affirmed *per curiam,* uses these words: " The simple misconstruction of a will or deed where there is no fraud or circumvention, cannot be regarded in any

point of view as coming within the scope and authority of those cases where mistakes of law in contradistinction to ignorance of law have been considered as affording grounds of relief. It is a cardinal theory of the law, founded upon a necessary policy, that every one is presumed to have a knowledge of its principles. This presumption prevails as well in reference to civil rights as in the criminal code. Without this doctrine, no system of law can practically fulfill the ends of its institution."

That case arose in this way: The will of Daniel Hesse gave certain lands to his grandchildren. The lands were sold and the money being in hand for distribution, all the grandchildren referred it to the ordinary to make up a statement for them according to the will, the sale and conveyances having been made by the grandchildren themselves. By this statement, a settlement was made letting in several grandchildren who were born after testator's death, and clearly not entitled to anything. It is true, that there were other grounds on which the Circuit decree rested the judgment, and the action was to recover back money paid. Yet this is very high authority for the opinion that, " the misconstruction of a deed or will is not to be regarded as coming within the scope and authorities of those cases where mistakes of law, as contradistinguished from ignorance of law, have been considered as affording grounds of relief."

In this view, this court concurs, and holds that even if there is a difference as to ignorance of law and mistake of law, and it should be regarded as in fact true that Pamela Cuningham had formed an opinion, either from her own construction of this will or in consequence of erroneous advice of others, this is no ground on which this court can relieve her devisee from the effect of these solemn deeds executed in 1875.

In the view taken by the court of this case, it is not necessary to consider the question of *laches* or the statute of limitations as a bar to plaintiff's claim; but, though urged in argument, no question has been made in reference thereto by the exceptions.

No act can be considered an estoppel unless it has been acted on by the party claiming the benefit of it. A man will not be allowed to aver against his own deed; but there is nothing in

the deed of January, 1875, of John Cuningham to Pamela Cuningham, or in the deed of same date of Pamela Cuningham, which in any way undertakes to dispose of the fee in this 760 acres of land after the death of Pamela. It stands now where it was before the deed was made—one moiety in John Cuningham and one moiety in the plaintiff, to whom it passed under Pamela's will. The parties simply held possession according to the terms of their respective deeds. We have held that these deeds cannot be reformed, but must stand according to their terms; and if the deed from John to Pamela had gone on to dispose of the remainder in the 760 acres after the death of Pamela, that would have been an end of the whole matter; but the omission of that deed to dispose of this remainder, has left such remainder untouched, and which thus fell under the will of Robert Cuningham, as herein construed.

No question has been raised by the appeal as to the mode of accounting for the rents and profits.

It is therefore ordered and adjudged, that the exceptions be overruled; that the judgment of the Circuit Court be affirmed, and the appeal dismissed.

