## 10393

### DENT ET AL. v. DENT ET AL.

(102 S. E. 715.)

1. Wills—Object of Construction Is to Ascertain Testator's Intention.—The object of construction of a will is to ascertain the intention of the testator, which, when ascertained, must be carried into effect, unless the intent violates some rule of law.

2. Wills—Intention Ascertained from Whole Will; Circumstances Considered Only Where Language Doubtful.—In construing a will, the intention of the testator must be ascertained from the instrument as a whole, and, while circumstances may be considered if the language is doubtful, they cannot be resorted to to prove the testator's intention apart from his language.

3. Wills—Courts Prefer Construction Giving Effect to Intention.—When the provisions of a will are doubtful or inconsistent, the Courts prefer an interpretation that will give force and effect to the intention of the testator according to the ordinary meaning of the will, and which will render effective the express language thereof, rather than to a conjecture arising from a supposed omission.

4. WILLS—CHILDREN OF BENEFICIARY WHO DIED DURING LIFE OF TESTATOR HELD ENTITLED TO TAKE.—Where testator directed that the residue of his estate, both real and personal, should be divided into three equal shares, and devised one share to each of his two brothers and the remaining share to the children of a deceased brother, *held* that, where testator by codicil after the death of one brother appointed a son of such brother executor in place of his father, it must be deemed that the children of such brother were entitled to take, for otherwise there would be another residue to be distributed according to the statutes of distribution.

Before SEASE, J., Richland, Spring term, 1919. Affirmed.

Action by E. H. Dent and others against Samuel H. Dent and others. From the judgment, defendants, Helen A. Covington Quarterman and others, appeal.

*Messrs. E. L. Craig* and *Williams, Williams & Stewart,* for appellants, submit: *The gift to Ben T. Dent lapsed and must be divided among the heirs at law and distributees of testator:* Vol. I, Code 1912, sec. 3574; 56 S. C. 11; 26 S. C. 450; 17 S. C. 428; 13 Rich. Eq. 104. *The circumstances necessary to create a gift by implication are lacking:* Case note 15 L. R. A. (N. S.) 73; Alexander's Com. on Wills, sec. 968; Alexander's Com. on Wills, sec. 771 (citing 37 Am. Dec. 524), sec. 965, citing 15 L. R. A. (N. S.) 73; 19 L. R. A. (N. S.) 541; 23 L. R. A. (N. S.) 895. *A will must be construed according to the intent of the testator, as disclosed by the words he has used, interpreted in the light of the surrounding circumstances:* 36 S. C., p. 38; note in 40 Cyc. 1389, citing 119 Ind. 254; 20 N. E. 779; 3 L. R. A. 847; 29 S. C. 470. *Cases analyzed and distinguished:* 36 S. C. 302; 6 Dana (Ky.) 51; Code 3574; 13 Rich. Eq. 104.

*Mr. C. M. Efird,* for respondents, submits: *The share of testator's property given to Benj. T. Dent has not lapsed and goes to the children of Benj. T. Dent from testator:* 36 S. C. 302; 13 Rich. Eq. 104; 6 Dan. (Ky.) 51. *The execution*

*of a codicil is in legal contemplation a republication of the*
*will in the absence of a contrary intention:* 6 Ency. of L., 2d
Ed. 195; 71 S. C. 175, 199.

March 30, 1920.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE GARY.

This action involves the construction of a will and codicil.
On the 26th of September, 1899, William H. Dent made his
will.    In the first clause he directed the payment of his debts.
In the second clause he bequeathed certain legacies to two
of his wife's relatives.    The third and fourth clauses are as
follows:

"The residue of my estate, both real and personal, which
I may die possessed, I direct to be divided into three equal
shares, one share I give, bequeath and devise to my brother,
Benjamin T. Dent, one share I give, bequeath and devise to
my brother, Samuel H. Dent, and one share I give, bequeath
and devise to the children of my deceased brother, James M.
Dent, share and share alike.

"I appoint my brothers, Benjamin T. Dent and Samuel H.
Dent, and my nephew, Eugene D. Dent, executors of this
my last will and testament."

On the 23d of April, 1910, the testator made the follow-
ing codicil to his will:

"As Benjamin T. Dent, one of the persons named as one
of the executors of the above written will, has died, I do
now, by this codicil to my above written will, appoint my
nephew, Samuel T. Dent, as one of the executors of my
said will in place of the said Benjamin T. Dent, deceased."

The testator died in 1913, unmarried.    His brother, Ben-
jamin T. Dent, died, after the making of the will, but before
the testator executed the codicil, leaving several children,
one of whom, Samuel T. Dent, was named in the codicil as
an executor.

The main question in the case is whether the legacy to Benjamin T. Dent lapsed by reason of his death during the lifetime of the testator, but before the execution of the codicil.

The following rule of construction is announced in *Roundtree v. Roundtree,* 26 S. C. 450, 2 S. E. 474: "The object of all construction is to ascertain the intention of the testator, and when that is ascertained it must be carried into effect, provided this can be done consistently with the settled rules of law. But how is the intention to be ascertained? Certainly not by a conjecture as to what the testator ought to have done, but by considering what is the plain meaning of the language which he has used, and by giving a careful consideration to words of the will as a whole, guided by such rules of law as experience has shown to be useful in seeking such intention. We are to read the will as a whole, and from its terms ascertain, if practicable, what was in the mind of the testator at the time he executed it. We may also, where the language used is obscure or doubtful, read such language in the light which may be reflected upon it by the circumstances surrounding the testator at the time he executed his will, but such circumstances cannot be resorted to to prove the testator's intention apart from his language."

To the same effect is the language of the Court in *Lott v Thompson,* 36 S. C. 38, 15 S. E. 278, to wit:

"A will is the formal declaration in writing, by which the maker provides for the distribution of his property after his death. This being the case, it necessarily follows that in its construction the first and great object should be to inquire what was the intention of testator. That intention must be gathered from the paper itself, the whole paper taken together, and read in the light of the circumstances surrounding the testator at the time he executed it. Sometimes from the inaccurate use of words, which have a technical, as

distinguished from the ordinary, meaning, there may be difficulty in ascertaining the meaning."

The appellant's attorneys in their argument cite the following cases from this State: *Cureton v. Massey,* 13 Rich. Eq. 104, 94 Am. Dec. 151; *Pratt v. McGhee,* 17 S. C. 428; *Roundtree v. Roundtree,* 26 S. C. 450, 2 S. E. 474; *Howze v. Barber,* 29 S. C. 466, 7 S. E. 817; *Lott v. Thompson,* 36 S. C. 38, 15 S. E. 278; *Rivers v. Rivers,* 36 S. C. 302, 15 S. E. 137. To the same effect are the cases of *Pegues v. Pegues,* 11 Rich. Eq. 554; *Suber v. Nash,* 84 S. C. 12, 65 S. E. 947.

We do not question the principles announced in those cases, which, however, are not applicable to the main proposition involved in the case now under consideration, to wit, that the will and codicil must be construed together, and in the light of the facts and circumstances existing at the time the codicil is executed. *Logan v. Cassidy,* 71 S. C. 175, 50 S. E. 794.

It is important to ascertain the scheme of the will in order to determine the effect the codicil had upon it. The scheme was: (1) To dispose of all the testator's property; (2) that the residue of his estate should be divided into three equal shares among his two brothers then living and the children of his deceased brother; (3) that those who were to take part in the distribution of the residue of his estate were likewise to participate in its administration as executors—his nephew, Eugene D. Dent, representing the class to which he belonged, viz., the children of his deceased father.

If the will is construed in accordance with its ordinary meaning, and without reference to technical rules, it shows clearly upon its face that it was the intention of the testator that the children of Benjamin T. Dent should take the one-third of the residue bequeathed to their father.

When the testator made a codicil to his will, after the death of Benjamin T. Dent, the only change which he made was the appointment of Samuel T. Dent as executor in the

place of his father, thus ratifying the scheme of the will that those to whom he bequeathed the residue should also administer his estate. It will be observed that, although the testator then knew of Benjamin T. Dent's death, he did not change the provision of his will that the residue was to be divided into three equal shares. There was, therefore, an express provision that his brother, Samuel H. Dent, should receive one-third and the children of his deceased brother, James M. Dent, one-third. If the children of Benjamin T. Dent are not entitled to the other one-third, then Samuel H. Dent will receive more than one-third, and so will the children of James M. Dent, in plain violation of the express language of the will.

The rules of construction hereinbefore quoted show that we are not allowed to resort to conjecture when it would have the effect of destroying the express provisions of the will.

It cannot be successfully contended that the residue may be divided into three equal shares, and that the share bequeathed to Benjamin T. Dent should be divided between his brother, Samuel H. Dent, and the children of his deceased brother, James M. Dent, as this would enable them to take more than the one-third intended by the testator. *Roundtree v. Roundtree,* 26 S. C. 450, 2 S. E. 474.

Furthermore, if the children of Benjamin T. Dent are not allowed to take the share bequeathed to him, then there will be another residue to be divided under the statute of distribution, and not under the will, although the plain intention of the testator was to dispose of all his property by his will.

When the provisions of a will are doubtful or inconsistent, under the technical rules of construction, the Courts prefer an interpretation that will give force and effect to the intention of the testator, according to the ordinary meaning of the will and that will render effective the express language thereof, rather than to a conjecture arising from a supposed omission.

Affirmed.

MESSRS. JUSTICES WATTS and GAGE concur.

MR. JUSTICE GAGE. There are no technical controlling words in the will to fix a constructive intent of the testator and to defeat the manifest real intent of the testator.

The circumstances of the case are so strong to fix the real intent that they leave no reasonable doubt in my mind about the intent. Therefore, I concur with the Chief Justice and vote for affirmance.

MR. JUSTICE HYDRICK, *dissenting.* However much we may regret the testator's ignorance of the law, or his lack of foresight in failing to express in his will the intention which we are asked to infer from the circumstances, we are not at liberty to violate the law and rules of construction, which are the landmarks of property, to give effect to a supposed intention, which the testator did not express and which cannot, according to the settled rules of construction, be gathered from the language of his will.

The statute requires that wills shall be in writing. Unless, therefore, the testator's intention is expressed in writing, or can fairly be inferred from what he has written, according to the settled rules of construction, effect cannot be given to it, without violating the statute. And, although the rules were adopted as aids to the discovery of the intention, nevertheless the intention, even when so discovered, cannot have effect if it conflicts with any settled rule of law. Again, while resort may be had to the circumstances to enable the Court to understand and declare the meaning of what the testator has written, the Court is not at liberty to infer from the circumstances an intention which he has not expressed in the will. These principles are clearly stated in the cases cited and quoted from by the Chief Justice. See, also, *Jones v. Quattlebaum,* 31 S. C. 606, 9 S. E. 982.

That a bequest or devise to a dead man canot be given effect is too plain to require more than statement; hence the rule that "unless the legatee survive the testator the legacy

is extinguished." 2 Williams on Executors 496; 1 Jarman on Wills, 617; *Dunlap v. Dunlap,* 4 DeSaus. 314; *Perry v. Logan,* 5 Rich. Eq. 202; *Rivers v. Rivers,* 36 S. C. 302, 15 S. E. 137.

In *Dunlap v. Dunlap, supra* (decided in 1812), Mr. Dunlap executed his will on September 9, 1804, and gave all his real and personal estate (except such parts as were otherwise disposed of) to his wife, and her heirs. But if she should die without issue, or marry again, then certain specified chattels were to go over to others named. Mrs. Dunlap died the next day, without issue, and testator immediately executed a codicil to his will in which, after reciting the dispositions of his will as to his real estate, and that his intention as to the same had been thwarted by the death of his wife, he made other dispositions of his real estate, and bequeathed several small legacies and then he died, on the same day, September 10th. The will and codicil had only two witnesses.

The Court held that the will was valid as to the personal estate, but ineffective to dispose of the real estate, because it had only two witnesses; that the execution of the codicil was a republication of the will; and that, although such republication took place after the death of Mrs. Dunlap, the legacy to her and her heirs lapsed except as to the chattels included in the bequest to her which were limited over to others, upon her death without issue. It was said that when the legacy is given over to others after the death of the first legatee, who predeceases the testator, the legatee in remainder shall have it immediately; and upon this principle it was held in *Rivers v. Rivers,* 36 S. C. 302, 15 S. E. 139, that the bequest and devise to George Thomas Rivers did not lapse. But, recognizing the general rule, the Court said:

"He (George Thomas Rivers) certainly died during the lifetime of testator. If this was all, the estate provided for him would lapse, even if he left a child"—citing *Cureton v. Massey,* 13 Rich. Eq. 104, 94 Am. Dec. 151.

In *Pegues v. Pegues,* 11 Rich. Eq. 554, William Pegues bequeathed to his son, Malachi Pegues, by name, $1,500, and, after other bequests and devises, he gave the residue of his estate to "all my children, to be equally divided amongst them, share and share alike." Malachi Pegues was dead when the will was executed. His children claimed the legacy of $1,500, and the share of the residue to which their father would have been entitled had he survived the testator. But the Court held that the bequest to Malachi was void, and that his children were not entitled to it, or to a share in the residue.

The children of Malachi Pegues presented a stronger case for relief than do the children of Benjamin Dent for two reasons: First, they were the grandchildren of the testator, while these claimants are only the nephews and nieces of testator; and, second, the children of Malachi Pegues contended that their case came within the remedial provisions of the act of 1789 (5 St. at Large, p. 107, sec. 9), "that if any child should die in the lifetime of the father or mother, leaving issue, any legacy given in the last will of such father or mother shall go to such issue, unless such deceased child was equally portioned with the other children, by the father or mother, when living."

But the Court denied them relief, and held that the statute was intended to provide for the case of a lapse after the execution of the will, and did not apply where the child was dead when the will was executed. Chancellor Johnstone, speaking for the Court, said:

"I can hardly suppose the legislature contemplated the case of a man's giving a legacy to a dead child—or that it intended to remedy the effect of such an absurdity. It may be very well conceived that it intended to make good a legacy which had become void, without going the length of supposing it intended to give effect to one which was void *ab initio.*"

There can be no doubt that William Pegues intended the gift to his son, Malachi, to be effective in some way. although he knew that he was dead; and there can hardly be a doubt that when he gave the residue of his estate to "all my children," he thought of Malachi as one of his children, and intended that his share should go either to his (Malachi's) children, or his personal representatives, or his heirs. But if that was the intention of the testator, effect could not be given to it, because he failed to express it in his will; and the Court had no power to do so, as that would have been making rather than construing his will. Besides, how could the Court have known what disposition testator would have made if he had known that the disposition which he did make was void, and could not take effect?

And how can we say what disposition William Dent would have made of the share which he intended for his brother, Benjamin, if he had known that the disposition which he did make was void, and could not have effect? It is probable that he thought it would go to Benjamin's heirs, in which case Benjamin's wife would have taken one-third of it. How can we say he intended it to go to Benjamin's children? The fact that he gave one share to the children of another deceased brother may afford some ground for an inference that such might have been his intention, but it is not enough to warrant the Court in holding that it was; for it is not unusual to find in the same will different provisions as to the portions given to children, and other beneficiaries of the same class. We are admonished by the decision of this Court, in *Bell v. Towell,* 18 S. C. 94, and numerous others, that, in construing wills, it is not safe to take a provision made for one state of facts and interpolate it into another provision, made for a different state of facts; and that, while a will should be construed as a whole, the intention of testator cannot be declared to be the same in all its parts unless it is so expressed.

Much stress is laid upon the fact, and the inference sought to be drawn from it, that the codicil was executed after the death of Benjamin, and refers to his death, and appoints one of his sons ·as an executor in his place.   Can it in reason be said from these facts that the intention was expressed that the share which was originally intended for Benjamin should go to his children, and only to his children?   Such a conclusion is based upon conjecture pure and simple. · It is not to be found in the words of the will, or to be reasonably implied from them, and it violates the rule that we cannot resort to extraneous circumstances to gather an intention which cannot be made out from the language of the will.

Moreover, the execution of the codicil was but a republication of the ·will as it then stood, and the circumstances cannot make the case stronger than it would have been if the will had been written in its present form for the first time, when the codicil was executed.   Upon that state of facts, the case cannot be differentiated from the case of *Dunlap v. Dunlap* and *Pegues v. Pegues,* both of which have been repeatedly reaffirmed.   See *Key v. Weathersbee,* 43 S. C. 414, 424, 21 S. E. 324, 328 (49 Am. St. Rep. 846), where both cases are cited with approval, and it is said, citing *Pegues v. Pegues* as authority, that "a devise or bequest to a person deceased at the time is void *ab initio.* * * * except in the case specially provided for by the act of 1789," and also the case of *Suber v. Nash,* 84 S. C. 12, 65 S. E. ·947, where the principle decided in *Pegues v. Pegues* was applied, and the case was cited as authority.   The devise to Benjamin having become void, by reason of his death before that of the testator, and, giving the execution of the codicil the · effect of a re-execution of the will, the devise then made, being to a person then dead, was absolutely void, and the Court has no power to give it validity.

The facts that testator did not intend to die intestate as to any part of his estate, that he directed that it be divided into three equal shares, and that, if Benjamin's share is not dis-

posed of according to the scheme of the will, but descends as intestate property, some of the beneficiaries will get more than testator intended them to receive, cannot, singly or collectively, affect the decision of the question; for, if so, they would prevent a lapse in every case, as they are the invariable and inevitable consequences of a lapse. Yet they have not hitherto been deemed sufficient to warrant the Courts departing from the established rule of law and construction.

Precisely the same circumstances and all of them occurred in the case of *Cureton v. Massey,* 13 Rich. Eq. 104, 94 Am. Dec. 151, and were adverted to by the Court. In that case, the testator declared that the great purpose of making his will was to include in the distribution of his estate some of his grand nephews and nieces, who would be excluded if he should die intestate; and the scheme of the will was that his will was that his estate was to be divided into equal shares, and that "the children of a deceased nephew and niece herein named will count one, and take among them the shares of their deceased parents, if they had been living;" and he gave to "the children and descendants" of his deceased sister, Mary, thus: "To Mrs. Matheson, one share; to Elizabeth Knox, one share." Each of these nieces died after the execution of the will and before the testator, leaving children. The Court held that it was manifest from the manner in which the testator had repeatedly expressed himself in his will, and from the fact that, in every instance he made provision therein for the children of every deceased nephew and niece who would, if living, have been a participant of his bounty, that, if he had anticipated, or if it had been brought to his mind at the time, that any nephew or niece to whom he gave a share might die, leaving issue, before his will should take effect, he would have made the bequest so as to meet such contingency, and have given the parents' share to the issue as a substitute. But the Court said:

"The question is one of construction purely and can be answered only by declaring what intention, if any, the tes-

tator has expressed. * * * If he has wholly failed to provide for the contingency which has happened, the Court may deplore his want of forethought, but cannot supply the omission resulting therefrom."

And it was held that the share of Mrs. Matheson and Mrs. Knox lapsed and descended as intestate property. Though the Court had no doubt of the testator's intention, it had not the power to write into his will, by construction, an intention which through ignorance or inadvertence he failed to express.

*Roundtree v. Roundtree,* 26 S. C. 450, 2 S. E. 474, was a case involving a great hardship. Testator gave his wife certain property for life, which at her death was to be divided equally between his "surviving children." After some dispositions, he devised that, immediately after his death, the residue of his estate should be equally divided between his "surviving children." James W. Roundtree, a son of testator, died only a few days before his father, leaving eight children. Testator was then too ill to change his will. It was held that the children of James were not entitled to the share which their father would have taken, if he had survived the testator and the life tenant. It was held that they could not take by substitution, notwithstanding the provision "that if any of my children should die leaving no issue, the property they received from my estate shall revert back and be equally divided between my surviving children," because, although the clause quoted provided for the case of a child dying leaving no issue, there was no express provision that, in case a child should die (before testator, or afterwards and before the period of distribution) leaving issue, such issue should take by substitution, and that such intention could not be implied from the express provision for the case of a child dying leaving no issue. This Court adopted the view taken by the Circuit Court that "Unless the parties so claiming (by substitution) can show

their right to substitution by the terms of the will itself, to let them in would be in effect to make a new will for the testator."

In disposing of the contention that the children of James should have relief on the ground of mistake, after showing that it was not a cause of mistake, but rather one of "misfortune or omission," the Court said:

"Can any one venture to say what the testator desired to do with the interest which he had intended for his dead son, and which he could not take by reason of his death? If the Court should undertake to do so, would not that be a clear case of undertaking to make, instead of construing, the will of a testator? It may be possible, and perhaps not altogether unlikely, that the testator supposed, after he was informed of the death of his son, James, that under the provisions of the act of 1789 his children would take what was given to him by the will, and, therefore, that it was unnecessary to make any alteration in his will. But even if this were so, this, clearly, was not such a mistake of law as the Court would relieve from (if, indeed, there is now any case in which relief would be granted upon that ground [*Cunningham v. Cunningham*, 20 S. C. 317]); for it was nothing more than an erroneous construction of a statute (*Pratt v. McGhee*, 17 S. C. 428), which certainly affords no ground of relief."

Can there be a doubt that, if the testator had anticipated the contingency which did occur, he would have made provision for the substitution of the children of James? Yet the Court was powerless to supply the omission by construction. How can that case be distinguished on principle from this?

In *Pratt v. McGhee*, 17 S. C. 428, testator devised all his land and bequeathed all his personal property, with insignificant exceptions, to his favorite son, who predeceased him; and it was held that the devise lapsed, and the property

descended to the heirs as intestate property, although the son left issue. The statute of 1789 (above quoted) was held inapplicable to devises. The statute was afterwards amended to include devises.

And this gives room for another remark, that the legislature, having made provision to prevent lapses of legacies and devises only in case the gifts to a child who should predecease his father or mother, leaving issue, intended that the existing law and rules of construction as declared by the Courts with respect to lapses in all other cases, should remain of full force and effect. *Logan v. Brunson,* 56 S. C. 7, 33 S. E. 737.

For the reasons above stated, and upon the authority of the cases above cited, I think the inevitable conclusion is, however regrettable, that the devise to Benjamin Dent was void, and that it lapsed, and, as there was no provision in the will for the substitution of his children, they cannot take the devise, but it descends as intestate property.

MR. JUSTICE FRASER concurs.