## LOTT v. THOMPSON.

1. CONSTRUCTION OF WILL—INTENTION.—A will must be construed according to the intent of the testator, as disclosed by the words he has used, interpreted in the light of the surrounding circumstances.

2. IBID.—LIMITATION OF ESTATES.—The words of a will were:
"As to such property as God has blessed me with I give and bequeath to my wife during her natural life at her decease the property to be divided in the following manner my colt to J to my son W four head of cattle with their increase also my watch the balance of my property to be equally divided between my heirs only B and M the heirs of their body to have an equal share with the rest of my heirs last of all I recommend that my wife have full control of my property to be managed by her to the best advantage until death for the benefit of said heirs."
Testator was survived by his wife and nine children, including his widowed daughters, B and M, and then the wife died. *Held*, that "only B and M" meant "except B and M," that the "heirs of their body" meant "children," and that such children of B and M took as purchasers a share in the lands of testator equal to the share given to each of testator's unexcluded children.

3. IBID.—IBID.—By the terms of this will, the children of B and M took *per stirpes ;* that is to say, the children of B one-ninth and the children of M one-ninth.

Before ALDRICH, J., Colleton, October, 1890.

This was an action by C. L. Lott, O. P. Crosby, and L. W. Crosby against W. O. Thompson and others, which turned upon the construction of the will of S. J. Thompson, which, omitting some merely formal parts, was as follows:

"As to such property as God has blessed me with I give and bequeath to my beloved wife Charlotte during her natural life at her decease the property to be divided in the following manner my colt to James to my son William four head of cattle with their increase also my watch the balance of my property to be equally divided between my heirs only Betsy and Martha the heirs of their body to have an equal share with the rest of my heirs last of all I recommend that my beloved wife have the full control of my property to be managed by her to the best advantage until death for the benefit of said heirs."

The case was referred to the master, who reported as follows:

The Hon. the presiding judge, at fall term, 1890: I, C. G. Henderson, master, do report: This cause was referred to me to

hear and determine all the issues. I have taken the testimony, and the cause has been most elaborately argued before me by the counsel engaged therein.

I find as matters of fact: I. That S. J. Thompson departed this life at the time stated in the pleadings, leaving his last will and testament of force, which was admitted to probate, as therein stated. The contest is over testator's realty alone. II. That Charlotte, the wife and life tenant, is dead, and that Betsy and Martha, mentioned in said 15th line, are still alive, and that their present children are, as stated in the pleadings, the plaintiffs herein. III. That the testator left surviving him nine children, who also survive the life tenant, and that one of them, the defendant, W. O. Thompson, has purchased the shares of five others of said children, to wit, Mary Warren, Jane Gill, Ellen Thompson, James Thompson, and Ann Hiott, the latter having made default herein, and I find that exhibit (B) of the testimony concludes her interest, that she is barred thereby, and that her interest enures to the benefit of W. O. Thompson and passes to any purchaser of the lands. Also that Lovey Crosby, one of the nine children, the remaining defendant, has made default and is unrepresented by counsel.

I find as matters of law: I. That under the will of testator, a title to land is attempted to be put in unascertained individuals, the enjoyment of which is postponed to the death of the life tenant at the making of the will, and now still unascertained, the heirs of Betsy and Martha, whereas by the terms of said instrument, under the rest and residue clause, the fee passed directly to his heirs burdened with a life estate; that is, such proportion of the fee as he purposed giving some of them thereby. Betsy and Martha being expressly excluded. Says Chan. Caldwell, in delivering opinion of the court in *Holeman* v. *Fort*, 3 Strob. Eq., 71: "It cannot be controverted that according to the strict rules of the common law, a deed conveying lands to the heirs of a person living is void and cannot be set up, either at law or in equity. The indefinite description of the donee, and the rule that *Nemo est hæres viventis*, and that a freehold cannot be created to take effect *in futuro*, combine to defeat such an instrument." This case was determined as late as 1848, and the same rule had pre-

viously been announced in earlier cases, notably in *Anderson* v. *Smoot*, 1 Speer Eq., 320; *Clark* v. *Mosely*, 1 Rich. Eq., 396; *Cole* v. *Creyon*, 1 Hill Chan., 311. These decisions were based on dicta of elementary writers, and I have been unable to find the rule reversed of later years.

It follows, therefore, that W. O. Thompson take under the said will as devisee and purchaser six-ninths or two-thirds of testator's realty and Lovey Crosby one-ninth, and that the limitation over of the remaining two-ninths to the heirs of Betsy and Martha fails and must be distributed as intestate's property—two-thirds of these two ninths to W. O. Thompson and one-ninth of two-ninths each to Lovey Crosby and Betsy and Martha, the two latter of whom are not parties to this suit. *Clark* v. *Mosely*, 1 Rich. Eq., 396. Under the strict practice in this State before the adoption of the Code, when these decisions were made, it would follow that the portion sought for by the plaintiffs would be deemed premature and their action would be dismissed, but under the plenary provisions of the Code, sections 194 and 197, it would seem that plaintiffs might be allowed to amend by adding the names of their ancestors and parents, Betsy and Martha, and striking out their own names; when the distribution of the proceeds of the realty would stand as follows under the will and the statute of distribution: W. O. Thompson, 66–81 of the whole; Lovey Crosby, 11–81 of the whole; Betsy Herndon, 2–81 of the whole; and Martha Crosby, 2–81 of the whole—less the costs of the action.

All of which is respectfully submitted.

Plaintiffs' exceptions to the master's report were as follows:

1. Because the master erred in not holding that the term "heirs" as used in testator's will was intended to mean children, and the period of time having arrived for distribution under said will, the plaintiffs were entitled to a partition and sale of said premises.

2. Because the master erred in not holding under a plain construction of the will, that plaintiffs were entitled to take at least a portion of the devise intended for the heirs of Betsy and Martha.

3. Because master erred in holding that the rule of "*Nemo est hæres viventis*," was applicable to this case, and that complaint

should be dismissed. 4. Because master erred in holding that S. J. Thompson died partially testate and partially intestate.

The defendant excepted on the following grounds: 1. For that the said master having found that the plaintiffs herein had no interest in the subject of the action. did not dismiss their complaint. 2. For that the said master having found that the plaintiffs herein had no cause of action against this defendant, did not dismiss their complaint. 3. For that the said master refused to dismiss the complaint herein, after having decided as a matter of law that the plaintiffs herein were not entitled to any interest or share in the lands sought to be partitioned by said complaint.

The Circuit decree overruled all of plaintiffs' exceptions, sustained all of defendant's exceptions, and dismissed the complaint. The plaintiffs appealed on the following grounds: 1. Because his honor erred in holding that the rule of "*Nemo est hæres viventis*" was applicable to this case, and in construing the words, "heirs of the body," in its technical sense, which deprived the plaintiffs of reaching the devise intended for them by the testator. 2. Because his honor erred in dismissing the complaint herein and in not allowing plaintiffs to amend, as recommended by the master. 3. Because his honor erred in requiring plaintiffs to pay their own costs. 4. Because his honor erred in not holding that plaintiffs were entitled at least to some interest in said devise.

*Mr. J. S. Griffin,* for appellant.

*Messrs. Howell, Murphy & Farrow,* contra.

March 31, 1892. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. S. J. Thompson departed this life, leaving surviving his widow, Charlotte, and nine children, all still living, viz., Ann Hiott, Mary Warren, Jane Gill, Ellen Thompson, Lovey Crosby, James Thompson, Martha Crosby, Elizabeth Herndon, and W. O. Thompson. The deceased left a will, which contained the following clause: "Such property as God has blessed me with I give and bequeath to my beloved wife Charlotte during her natural life at her decease the property

to be divided in the following manner my colt to James to my son William four head of cattle with their increase also my watch the balance of my property to be equally divided between my heirs only Betsy and Martha the heirs of their body to have an equal share with the rest of my heirs," &c.　The "Betsy" mentioned in the will is the mother of C. L. Lott, one of the plaintiffs. and is still alive; the "Martha" mentioned in the will is the mother of O. P. Crosby and L. W. Crosby, the other two plaintiffs, and she is also still alive.　The life tenant, Charlotte, is now dead, and the whole question is as to the construction of the will as to the interests of the remaindermen.

The proceeding was instituted by the children of Betsy and Martha for partition of the tract of land left by the testator, insisting that they have an interest in the lands of their grandfather, who never intended to cut them and their mothers off from all interest in his lands, but merely to substitute them in the partition for their respective mothers.　The defendant, W. O. Thompson, before the master, interposed two defences : .(1) That the plaintiffs have no cause of action, in that the property, after the falling in of the life estate, was to be divided between the children or heirs of the testator and heirs of the body of "Betsy" and "Martha," and that inasmuch as Betsy and Martha were still alive, the plaintiffs were not "the heirs" of their body, under the maxim, *Nemo est hæres viventis.*　And (2) that if this was error, the plaintiffs will only take such shares as their mothers, "Betsy" and "Martha," would have been entitled to; that is to say, C. L. Lott would take an undivided ninth, and O. P. Crosby and L. W. Crosby would each take one-half of one undivided ninth; so that the whole estate would be divided in such manner as that he, W. O. Thompson, would get his proper proportion, as if Betsy and Martha took their respective shares, without bringing in their children.

The Circuit Judge held that the first defence was well taken—that the plaintiffs took no interest under their grandfather's will, and dismissed the complaint.　From this decree the plaintiffs appeal to this court upon the ground that the Circuit Judge committed error in his construction of the will of the testator.

The only question in the case is as to the proper construction

of the will of S. J. Thompson.  A will is the formal declaration in writing, by which the maker provides for the distribution of his property after his death.  This being the case, it necessarily follows, that in its construction the first and great object should be to inquire what was the intention of the testator.  That intention must be gathered from the paper itself, the whole paper taken together, and read in the light of the circumstances surrounding the testator at the time he executed it.  Sometimes, from the inaccurate use of words, which have a technical, as distinguished from the ordinary meaning, there may be difficulty in ascertaining the meaning.  *Bannister* v. *Bull,* 16 S. C., 227 ; *Durant* v. *Nash,* 30 *Id.,* 184.

It is manifest that the will of the testator was written by himself, without counsel, without any regard to, or possibly knowledge of, the technical meaning attached to certain legal terms and phrases.  For instance, in disposing of property, mostly land, he does not say "devise," but "I give and bequeath."  But it seems to us that it is not very difficult to understand what he really intended.  It is quite clear that his general intention was to maintain equality among the beneficiaries of his bounty—"to be equally divided between my heirs."  To this general purpose, it seems that he desired to make a special provision as to the shares which would be going to his widowed daughters, "Betsy" and "Martha," by giving to them, at the end of the provision for an equal division, as follows: "Only Betsy and Martha, the heirs of their body to have an equal share with the rest of my heirs;" being equivalent, as the plaintiffs claim, to saying "*except* Betsy and Martha, whose shares shall go to their respective children, then *in esse,* in such manner as to give them an equal share with the rest of my (heirs) children."

As we understand, it was agreed at the bar, and, as we think, correctly, that the word "only" should be interpreted "except"— the effect being to exclude Betsy and Martha from all interest personally under the will ; and it seems to us that we should not make a strictly technical construction of the words, "heirs of their body," in order to exclude their children also from all interest under the will, against the clear and manifest intention of the testator, that they should have "an equal share with the rest of

my (his) heirs." It is quite true that, in a strict sense, no person can sustain the character of "heir," in the life time of the ancestor, according to the familiar maxim, "*Nemo est hæres viventis,*" but it is always open to inquiry, whether the testator used the words according to the strict and proper acceptation, or in a more inaccurate sense, to denote "children," "next of kin," &c. *Bailey* v. *Patterson*, 3 Rich. Eq., 158. In discussing that case, Chancellor Dunkin said : "The testator takes notice that the ancestor was alive at the making of his will. There can be no doubt that the testator did not intend that the words, 'lawful heirs,' should be taken in their technical meaning, but he intended to designate a class of persons who could take immediately on his death," &c. (See the authorities cited.) He adds : "I think the words, 'to be divided equally among them,' also indicate that the words were used in their ordinary and not technical sense."

We think it is manifest, that in this case the testator did *not* employ the word "heir" in its technical sense. The tenor of the will shows it. The word "heirs" occurs four times in the will, and in every instance it is used as synonymous with "children." The testator always uses the word "heirs" when speaking of his own immediate offspring, his children, who take as *devisees* under his will, and is it strange that he should do so, when speaking of the children of his daughters, who were excluded from all interest under his will ? The test is, that if the word "heirs" is used as a word of *purchase* and not of *limitation*, it will always be construed in its ordinary untechnical sense. Now, is it not absolutely certain that all these parties take under the will as *devisees ?* Certainly the testator's children do, although they, by a misnomer, are called "heirs," and even more certainly the children of the two excluded daughters do. If they get anything, it will be *as purchasers* under the will, for nothing whatever was given to their mothers, which they could now or hereafter *inherit from them as heirs.* They were all incorrectly, but in accordance with common parlance, designated as "heirs," but that was merely *descriptio personarum*, and did not, and could not, alter their true character. The maxim, *Nemo est hæres viventis*, has no proper application whatever to the case. See *Bailey* v. *Pat-*

*terson, supra;* *Ramsay* v. *Joyce,* McMull. Eq., 252; and *Lemacks* v. *Glover,* 1 Rich. Eq., 141.

Then, how much and how do the plaintiffs take, *per capita* or *per stirpes?* Upon this subject there is some very nice learning, which, if we had time, it might be pleasant to pursue; but we do not think it is necessary to enter upon it in this case, as the question is settled by the will itself. Our construction of the will is, that the testator intended that each set of his grandchildren, styled "heirs of their body," should stand in the place of their excluded mother. That is the interpretation which we give to the awkward sentence, "only Betsy and Martha, the heirs of their body to have an equal share with the rest of my heirs." The plaintiffs as the "children" of Betsy and Martha, take the shares of their mothers *per stirpes,* that is to say, C. L. Lott takes one-ninth, and O. P. Crosby and L. W. Crosby divide another ninth between them. See *Cole* v. *Creyon,* 1 Hill Ch., 311; and *Conner* v. *Johnson,* 2 Hill Ch., 41.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit Court for such other orders as may be deemed necessary to carry out the conclusions herein announced.