### 7642

### REMBERT v. EVANS.

1. TRUST DEED—LIMITATION OF ESTATES.—"HEIRS BORN OF HER BODY," used in the trust deed here, viewed in the light of the general and specific scheme of the trust as clearly indicated in the entire deed, construed to mean children.

2. CONTINGENT REMAINDERS are transmissible by devise or assignment.

Before DEVORE, J., Richland, June, 1910. Affirmed.

Action by George R. Rembert against W. Boyd Evans. From Circuit decree, defendant appeals.

*Mr. E. J. Best,* for appellant, cites: *As to construction of heirs of the body:* 24 S. C., 314; 67 S. C., 308; 65 S. C., 354; 1 Rich. Eq., 404; 52 S. C., 554; 1 Strob. Eq., 404; 48 S. C., 440; 3 Rich. Eq., 559; 16 S. C., 290; 2 Strob. Eq., 190.

*Messrs. Shand & Shand* and *Washington Clark,* contra. *Messrs. Shand & Shand* cite: *Fee was in trustee:* Lewin on Trusts, 249-51; 29 S. C., 136; 31 S. C., 13. *The wives of trustees did not take a fee conditional:* 6 Rich. Eq., 9; 1 Curtis, 428; 30 S. C., 144; 30 S. C., 130; 42 S. C., 342; 65 S. C., 345. *Revert not used here in technical sense:* 2 Wash. R. Prop., secs. 1509-15; 38 S. C., 73; 65 S. C., 393. *The last takers held a contingent remainder in fee:* 9 Rich. Eq., 303; 31 S. C., 14; 15 S. C., 277. *This interest may be conveyed:* 2 Wash. R. P., 1509 *et seq. Contract to convey must be performed by devisee:* 5 Rich. Eq., 370; Code 1902, 2609-11; Bail. Eq., 228; 4 Rich. Eq., 425; 17 S. C., 441, 549.

*Mr. Clark* cites: *"Heirs born of her body" mean children:* 67 S. C., 133; 3 Rich. Eq., 158; 23 S. C., 238; 4 DeS. Eq., 439; 25 S. C., 289; 36 S. C., 38; 42 S. C., 342; 71 S. C.,

279; 42 S. C., 346; 3 Strob. Eq., 66.   *Rule in Shelley's case does not apply:* 8 Rich. Eq., 11; 39 S. C., 144.

July 28, 1910.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   In this action for specific performance the defendant admits his contract to purchase the land described in the complaint, but denies that the plaintiff can make a good title.   The issue thus made depends upon the construction of a deed of trust made by Jesse DeBruhl to Samuel Fair and J. Foster Marshall, on January 7, 1853. The consideration of the deed was love and affection of the grantor for his daughters, Mary D. Fair, wife of Samuel Fair, and Elizabeth A. Marshall, wife of J. Foster Marshall.   The trust was thus declared in the granting clause immediately preceding the description of the land and negroes conveyed: "In trust and for the use, behoof and sole benefit of the said *Mary D. Fair and Elizabeth A. Marshall, and the children hereafter to be born of the bodies of the said Mary D. Fair and the said Elizabeth A. Marshall,* and not in any wise to be subject to the debts, liabilities or contracts of their present husbands, or any other future husbands."   After the usual clause of warranty, the trust is thus further set out: "And it is further agreed by these presents that the above mentioned real and personal estate is held by the trustees aforesaid as joint tenants in common for the sole benefit, use and behoof of the said *Mary D. Fair and the children to be born of her body,* and for the sole benefit, use and behoof of the said *Elizabeth A. Marshall and her children now born or to be hereafter born of her body.*   And it is expressly understood by these presents, that one-half of the net profits, after paying all the debts and contracts made in behalf of the said plantation, arising from the said plantation and negroes, shall be divided equally between the said trustees for the use, benefit and behoof of their respective wives, and that in case the

said Mary D. Fair shall die without child or children, then the profits of said land and negroes above given in trust for her shall be held and enjoyed by her husband, Samuel Fair, for and during the term of his natural life, not in any wise subject to his present debts, liabilities or contracts, or any other future debts, liabilities or contracts, and after his death to revert to the said *Elizabeth A. Marshall and the heirs born of her body.* And it is further agreed by these presents, that in case of the death of the said Elizabeth A. Marshall the portion of said land and negroes above given in trust for her and children shall be held and enjoyed by her husband, J. Foster, for and during the term of his natural life, not in any wise to be subject to his present debts, liabilities or contracts, or any other future debts, liabilities or contracts, and after his death to go to *his children begotten on the body of his present wife, Elizabeth A. Marshall.* And it is further agreed by these presents, that the trustees aforesaid are hereby empowered to grant, bargain and sell the above described tract of land, or any part of the above named negroes and their future increase, whenever they may deem it advisable for the use, benefit and behoof of the said Mary D. Fair and the said Elizabeth A. Marshall. And it is further agreed by these presents, that the above named trustees shall have power, and they are hereby authorized, whenever they may deem it advisable, to bargain, sell and convey to the other one-half of the above mentioned real and personal estate, and that the proceeds of such sale shall be invested in any other real or personal property for the sole use and benefit of the *cestui que trust* for whose benefit such sale and transfer was made. And it is further agreed by these presents, that the above mentioned plantation, and negroes and their future increase, shall be under the exclusive management and control of the said J. Foster Marshall, to make all necessary contracts appertaining to the same, and to be allowed a reasonable compensation for the trouble and time he may

expend in and about the same, and that he be required annually to make a return to the said Samuel Fair for his receipts and expenditures, and to divide with the said Samuel Fair one-half of the net profits arising from said plantation. And the said Samuel Fair and J. Foster Marshall, trustees as aforesaid, doth, on their several parts, accept the trust aforesaid and covenant and agree to and with the said Jesse DeBruhl, and they hereby bind their heirs, executors and administrators to execute and carry out the above mentioned trusts according to the true intent and meaning of these presents."

By a declaration of trust, dated 16th of June, 1863, Samuel Fair, one of the trustees, undertook to substitute for trust funds used by him certain lots in the city of Columbia: these are the lots which the plaintiff has contracted to convey to the defendant. In *Brazel* v. *Fair,* 26 S. C., 370, 2 S. E., 293, it was held that the substitution was attempted without authority, but that the lots became a part of the trust property by election of the *cestui que trust* to affirm the substitution.

An agreed statement of facts appears in the record, setting forth in detail all the facts with respect to the family history and the conveyances of the land which, in any view, could possibly bear on the case. As we see the case, only a very short summary of the facts is necessary. Col. J. Foster Marshall was killed at Second Manassas in 1862; and Elizabeth A. Marshall died in 1868, survived by six children, Samuel F., William J., J. Foster, J. Q., Eliza D. and Mary F. Marshall. Samuel Fair and Mary D. Fair died childless, the former in 1870 and the latter in 1891. At the death of Mrs. Fair all the children of Mrs. Marshall were living except Eliza, who died unmarried, and Mary F., who married George Wilson and died childless. J. Q. Marshall by purchase and devise acquired all the interests of his brothers and sisters and of George W. Wilson, the husband of his deceased sister, Eliza D. Wilson, in the land.

J. Q. Marshall contracted to sell the land to the Phœnix Investment Company, but he died before making the conveyance, leaving a will by which he devised all of his property to his wife, Jane Brooks Marshall. Afterwards Mrs. Marshall, as sole devisee, made the conveyance under which plaintiff claims. The main question then is whether J. Q. Marshall had acquired a good fee simple title to the land.

From the foregoing statement it will be seen that the land here involved fell under the clause of the trust deed, which provided that upon the death of Mary D. Fair, childless, the share of the land and negroes assigned to her was to be enjoyed by her husband, Samuel Fair, for his life, "and after his death to revert to the said Elizabeth A. Marshall and the heirs born of her body."

If this clause created a fee conditional in Mrs. Marshall, as the defendant contends, the issue as to the title would be quite serious, for the reason that at the period of distribution, the death of Mrs. Fair in 1891, some of the children of Mrs. Marshall had children who would answer to the description of heirs of her body; and these grandchildren of Mrs. Marshall did not convey to J. Q. Marshall. The Circuit Court held, however, that the words, "heirs born of her body," meant the children of Mrs. Marshall; that they took in fee simple, and that in acquiring the interests of all who could claim under them J. Q. Marshall acquired a complete fee simple title. We think this is the correct construction. The deed, taken as a whole, shows by the words we have italicized that the grantor meant to provide for his daughters and their children. The first general and comprehensive expression of the scope of the trust is that it is to be for the benefit of his daughters and their children. Then when in the deed the terms and conditions of the trust are to be more specifically stated the same purpose and scheme is expressed. The deed is inartificial and indicates on its face that the grantor was not attempting to use the words in their technical sense. Having several times expressed

that his purpose was to provide for children born of the bodies of his daughters, it is not natural to suppose that there was an intention to express in this clause by the phrase "heirs born of her body" a different intention. The words heirs of the body may be construed to mean children when the context clearly shows that was the meaning intended. *Ducket* v. *Butler,* 67 S. C., 130, 45 S. E., 137, and authorities cited.

Here there was no intervening life estate, but a direct grant to "Mrs. Marshall and the heirs born of her body," and in such cases the words "heirs born of her body" have often been construed to mean children and not heirs of the body in indefinite succession. *Reeves* v. *Cook,* 71 S. C., 275, 51 S. E., 93; *Holman* v. *Fort,* 3 Strob. Eq., 66; *Bailey* v. *Patterson,* 3 Rich. Eq., 156; *Lott* v. *Thompson,* 36 S. C., 38, 15 S. E., 278; *Shaw* v. *Robinson,* 42 S. C., 342, 20 S. E., 161. When the expression is viewed in the light of the general and specific scheme of the trust as clearly indicated in the entire deed, there is no room to doubt that the words "heirs born of her body" should be construed to mean children.

Had the conveyance been direct to Mrs. Marshall and her children they would have taken nothing more than a life estate, because there was no limitation to Mrs. Marshall and her children and *their heirs.* But the conveyance was to a trustee, and the statute did not execute the use because the trustees were vested with the power to sell the land at their discretion, and this made it necessary for them to hold the fee. *Blount* v. *Walker,* 31 S. C., 13, 9 S. E., 804. Upon the death of Mrs. Fair the trustee could have nothing further to do, and by devolution the legal title of the children of Mrs. Marshall in fee would become complete. *Bratton* v. *Massey,* 15 S. C., 277; *Foster* v. *Glover,* 46 S. C., 522, 24 S. E., 370.

It is true that until the death of Mrs. Fair the interest of the children of Mrs. Marshall was contingent, for if

Mrs. Fair had died leaving children the children of Mrs. Marshall would have taken no interest in this land. Nevertheless these contingent remainders were transmissible by devise or assignment. *Alston* v. *Bank,* 2 Hill Ch., 235; *Rountree* v. *Rountree,* 26 S. C., 450, 2 S. E., 474; *Bank* v. *Garlington,* 54 S. C., 413, 32 S. E., 513; *Earle* v. *Maxwell,* 86 S. C., 1. Therefore, it did not affect the validity of the title of J. Q. Marshall that he acquired the interest of his brothers and sisters by devise and conveyance before the death of Mrs. Fair; having acquired all these contingent interests, upon the death of Mrs. Fair the legal title became complete in him.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.