13305

DAVIS *ET AL.* v. DALRYMPLE *ET AL.*

(161 S. E., 738)

491

492

494

*Mr. Samuel Want,* for appellants,

*Messrs. Dargan & Paulling,* for respondent,

December 16, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

On the first hearing of this appeal, our judgment was an affirmance of the decree of his Honor, Judge Shipp, appealed

from. A very able and earnest petition for a rehearing on the part of the appellants was granted, that the Court might give further consideration to the important issues involved in the cause. We have again gone into the case thoroughly, and are firmly convinced that the decree of Judge Shipp, under well-established principles of law, was correct. It will be reported, and is affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.

MR. JUSTICE COTHRAN (dissenting) : This is an action by Mary C. Davis and James F. Dalrymple, children of J. S. Dalrymple, deceased, against their mother, Elizabeth Dalrymple, their brothers, Thomas F. Dalrymple, Boyd Dalrymple, and Sidney Dalrymple, two lien creditors of Elizabeth Dalrymple, B. W. Best and C. M. Pennington, and J. H. Moore a grantee of Elizabeth Dalrymple of a certain tract (later explained), for the purpose of obtaining an adjudication that in the real estate involved Elizabeth Dalrymple, the widow of J. S. Dalrymple, acquired under his will only a life estate, the remainder in fee vesting in the two plaintiffs and the three brothers named as defendants, the children of Elizabeth Dalrymple by her husband, the testator, J. S. Dalrymple.

It is necessary that a short family history of J. S. Dalrymple be given : He was married three times. His first wife was Margaret ......, and by her was born one child, William M. Dalrymple, who was alive at the time of the death of J. S. Dalrymple in October, 1914. His second wife was ......, and by her was born one child, J. D. Dalrymple, who predeceased his father, leaving a son, Elbert, who was alive at the time of the death of his grandfather. His third wife was Elizabeth ......, and by her were born five children, the plaintiffs, Mary C. Davis and James F. Dalrymple, and the defendants Thomas F. Dalrymple, Boyd Dalrymple, and J. T. Sidney Dalrymple, all of whom, including the wife,

Elizabeth were alive at the time of the death of J. S. Dalrymple.

It appears that prior to his death in October, 1914, J. S. Dalrymple owned at least four tracts of land.

On October 18, 1882, he and his then wife, conveyed to William M. Dalrymple their only child, 140 acres of land in Darlington County. On March 8, 1897, J. S. Dalrymple conveyed to J. D. Dalrymple, the only child by his second wife, 118 acres of land, also in Darlington County.

At the time of his death J. S. Dalrymple owned a tract of 312.5 acres in Chesterfield County, and the home place, containing 117 acres, in Darlington County.

On May 19, 1914, he executed a will in which he bequeathed and devised, after the payment of his debts and funeral expenses, "all the residue and remainder of my estate both real and personal, consisting of a tract of one hundred and seventeen acres of land, be the same more or less on which I now reside, and all the personal property I now possess including stock of all kinds, household property of all kinds, money and other valuables to me belonging, to my beloved wife, Elizabeth Dalrymple, to have and to hold to her my said wife and to her bodily heirs by me, she to have and enjoy the same during her lifetime and at her death to go to her heirs by me equal."

By the third paragraph of the will he bequeathed to his son, William M. Dalrymple, the sum of $10, adding: "He having previously had his portion in land." In the same paragraph he bequeathed to his grandson, Elbert, the sum of $10, adding: "His father having received his share of my property by deed also." The third paragraph of the will is explained by the fact that on October 18, 1882, J. S. Dalrymple and his then wife, Margaret Dalrymple, had conveyed 140 acres of land to William M. Dalrymple; and on March 8, 1897, he had conveyed 118 acres to J. D. Dalrymple, the father of Elbert, as before stated. These tracts are not now involved. .

On June 25, 1914, J. S. Dalrymple executed a codicil to the will of May 19, 1914, and thereby devised the Chesterfield lands to his wife, Elizabeth, with this limitation: "To have and to hold to my wife and to her bodily heirs by me, she to have and enjoy the same during her lifetime, and at her death to go to her heirs by me equal."

On January 31, 1920, Elizabeth Dalrymple commenced an action in the Court of Common Pleas of Chesterfield County against the children of J. S. Dalrymple and herself, Mary C. Dalrymple, now Davis, James Floyd Dalrymple, Thomas F. Dalrymple, Boyd Dalrymple, J. T. S. Dalrymple and J. H. Moore. She alleged she was the widow of J. S. Dalrymple, and that the defendants, except J. H. Moore were his children; that under his will she acquired a fee-conditional estate in the Chesterfield lands; that she had entered into an agreement with the defendant J. H. Moore to sell and convey the same to him; but that he had refused to accept her deed therefor on the ground that under the will it might be held that her children by the testator had some interest in the land. She asked that the will be construed so that Moore upon payment of the purchase price would receive an unquestioned title; that it be adjudged that she owned a fee-conditional estate in the land. All of the defendants answered; the adults admitting the allegations of the complaint and joining in the prayer; the infant defendants filing formal answers by guardian *ad litem*. The case was heard by his Honor, Judge Wilson, and on March 29, 1920, he filed a decree holding that Elizabeth Dalrymple had a fee-conditional estate in the Chesterfield land and the right to convey the same in fee simple to the defendant J. H. Moore, issue having been born to her. Later Elizabeth Dalrymple sold and conveyed the land to Moore, who paid a part of the purchase money and gave his bond and mortgage for the remainder.

This action was commenced in December, 1927. The defendants other than the three sons contended that the Ches-

terfield proceedings were not only *res judicata* upon all parties, so far as the Chesterfield land was concerned, but were a judicial construction of the will, in practically the same terms so far as the home place in Darlington County was concerned.

The case was referred to C. E. Sligh, Esq., Probate Judge, to take the testimony and report it. Upon the coming in of his report the matter came up before his Honor, Judge Shipp. He filed a decree (which will be reported), dated November 24, 1928, in which he sustained the plea of *res adjudicata* of the Chesterfield proceedings in reference to the Chesterfield land, but overruled the contention that they had that effect in reference to the home place. He held, construing the will in reference to the home place, that Mrs. Elizabeth Dalrymple took a fee-conditional under the rule in *Shelly's Case,* and dismissed the complaint.

I agree with his conclusions as to the effect of the Chesterfield proceedings in both respects, but I do not agree with him in his conclusion that Elizabeth Dalrymple, the widow, took a fee-conditional under the will. On the contrary, I think that she took a life estate only, with remainder to the children of J. S. Dalrymple and herself in fee simple.

The limitation in the will affecting the home place, is as follows: "I give, devise and bequeath * * * my estate * * * real * * * consisting of the tract of 117 acres of land * * * on which I now reside * * * to my beloved wife Elizabeth Dalrymple to have and to hold to her my said wife and to her bodily heirs by me, she to have and enjoy the same during her lifetime and at her death to go to her heirs by me equal."

Taking the whole clause together, and giving each provision effect, it is clear that the limitation was to the wife for life, and at her death the remainder in fee to her bodily heirs begotten by him. The vital issue is whether this limitation, under the rule in *Shelley's Case,* vests in the wife, the taker of the life estate primarily, a fee-conditional, per-

mitting her to lien or incumber the estate upon the birth of issue.

In my dissenting opinion, in the case of *Strother v. Folk,* 123 S. C., at page 146, 115 S. E., 605, I endeavored to analyze the rule. My convictions there expressed have not been changed; what I might now say would˙be a repetition of them, which is not at all necessary in view of the accessibility of the reported case. The gist of them is that, if the limitation, with its accompanying expressions and other expressions in the will, demonstrate that the parties intended as remaindermen constitute a class which take in their individual right, as the stock of a new inheritance and do not indicate an indefinite line of succession as heirs or heirs of the body of the designated life tenant, the rule does not apply. If they do not take as such heirs, but represent a class upon which the legal title in fee has been conferred by the will, to come into possession at the efflux of the preceding life estate, there is no necessity to resort to the legal legerdemain of the rule; they take by individual acquisition, independently of their relation to the life tenant, and not by heritable succession from him.

If. a legal construction of the limitation demands the interpretation of indefinite succession, the intention of the donor is absolutely negligible; but if by any expression in the will, in a superadded clause or elsewhere, the question does not demand an arbitrary solution, but is open to inquiry, the intention so ascertained will, when so construed, annihilate the conception of indefinite succession and fix the interests of the remaindermen as direct donees of the testator's bounty, the stock of a new inheritance. That the superadded clause, or in fact any other portion of the will, may be resorted to for the purpose of ascertaining the intention of the grantor in this limited particular, is well established; not the intention of the testator as to how the estate should go, but as to the capacity in which the remaindermen should take, whether as heirs of the donee or as direct objects per-

sonally of the donor's bounty. See cases cited in the *Strother v. Folk case,* 123 S. C., at page 151, 115 S. E., 605.

In most of the cases bearing upon this question the inquiry is whether the words "heirs" or "heirs of the body," are used in their ordinary sense of "children" or as technical words indicating an indefinite succession. This of course in certain cases is an important and controlling issue, but it is not the only one; if it should be concluded that they were used in the ordinary sense indicated, it would be conclusive that a class to take in their own right as the stock of a new inheritance was provided for; but the same result would be attained if the words "heirs" or "heirs of the body" were not intended to mean "children," but were intended to constitute a class to take in similar manner.

As is said in Kale, Future Interests, 476: "Let it be understood then that when in this topic reference is made to 'heirs' as a word of purchase reference is not made to the case where 'heirs' is construed as meaning 'children' or 'issue' but to the case where 'heirs' is used as a word to designate the person or persons who would be entitled to take by descent from the life tenant in case the life tenant died seized and possessed of a fee simple, such person or persons when thus designated to take as individuals because they answer that description."

Under either condition, I think that it is clear that the limitation of the remainder was intended to create such a class.

It seems impossible to translate the expression "bodily heirs by me" otherwise than as "children."

In *Granger v. Granger,* 147 Ind., 95, 44 N. E., 189, 190, 46 N. E., 80, 36 L. R. A., 186, 190, the Court said: "It is true that the words 'heirs of his body,' standing by themselves, might mean any persons in the line of descent from Edwin, and who might, in law, be entitled to inherit from him—his issue generally. Certainly, however, the only ones of all such heirs that could be 'by him begotten' would be his

own natural-born children. A man cannot beget any one except his own children. He may have numerous heirs, but the only heirs begotten by him are his own sons and daughters. Nor can we ignore or pass over this expressive word. 'To beget' is as strong a term as 'child' itself. It is the act by which a child is brought into being. In a measure, the same relation exists between the word 'beget' and the word 'child' that does between the word 'create' and the word 'creation,' between cause and effect."

In *McLure v. Young*, 3 Rich. Eq., 559, at page 574, the Court said: "Language of the strictest technical import, as heirs of the body, will not control the construction if the intention be clearly manifested to describe thereby a class of persons to take at a particular period. In such case the intention will prevail. The rule only requires, says Mr. Jarman, a clear indication of intention to that effect."

In *McLure v. Young*, 3 Rich. Eq., 559, the devise was to the testator's "daughter C., for and during the term of her natural life; and at her death, I give, bequeath and devise the same, absolutely and forever, to her lineal descendants."

In *Buist v. Dawes*, 4 Rich Eq., 421, the syllabus is: "Devise of 'the use' of lands 'to J. P. for life; and, at his decease, the said lands shall be, and is hereby declared to be, vested in the male issue of the said J. P., and in default of such, in the issue female surviving him; and if a general failure should be at the decease of the said J. P.,' then, over —Held, that J. P. did not take a fee conditional in the lands."

In *Duckett v. Butler*, 67 S. C., 130, 45 S. E., 137, 138, the Court said: "When not in violation of some rule of law, the intention of the maker must prevail, and such intention should be ascertained from a consideration of the whole instrument. According to our decisions, it is always open to inquiry whether the grantor or testator used the words 'heirs' according to its strict and proper acceptation, or in a more inaccurate sense to denote 'children.' * * * Cases

like *Whitworth v. Stuckey,* 1 Rich. Eq., 404; *Bethea v. Bethea,* 48 S. C., 440, 26 S. E., 716; *Simms v. Buist,* 52 S. C., 554, 30 S. E., 400, do not conflict with this view, for there was nothing in the instruments under consideration in these cases to show that such terms as 'lawful issue of body,' 'heirs of her bodys,' were used in a restricted sense, denoting children."

In the case of *McWhite v. Roseman,* 114 S. C., 177, 103 S. E., 586, this Court refused to treat the expression "bodily heirs" as an expression of limitation under the rule in *Shelley's case,* because in other parts of the will the language used by the testator indicated that he used the word "heirs" in the sense of "children," rather than in its technical aspect.

In the case of *Rowe v. Moore,* 89 S. C., 561, 72 S. E., 468, 470, there was a devise to one for life, with remainder to the heirs of her body. This well-defined expression of limitation, within the rule in *Shelley's case,* was, however, denied its technical signification, and because of other expressions in the will, was held to have been used in the sense of "children." The Court said: "It is true that the rule in *Shelley's case* is still binding authority in South Carolina, but when it appears that the words 'heirs,' 'heirs of the body,' or 'issue' are so qualified by additional words in the will as to evince an intention that they are not to be taken as descriptive of an indefinite line of descent, but are used to indicate a new stock of inheritance, the rule in *Shelley's case* does not apply."

There are numerous other cases in South Carolina in which this Court has held that the expression "heirs," "heirs of the body," etc., are to be construed under the circumstances of the particular cases as if they read "children," among which are the following: *Bailey v. Patterson,* 3 Rich. Eq., 156; *Moone v. Henderson,* 4 Desaus., 459; *Shaw v. Robinson,* 42 S. C., 342, 20 S. E., 161; *Hayne v. Irvine,* 25 S. C., 289; *Lott v. Thompson,* 36 S. C., 38, 15 S. E., 278; *McWhite v. Roseman,* 114 S. C., 177, 103 S. E., 586; *First*

*Nat. Bank v. Hutson,* 142 S. C., 239, 140 S. E., 596; *Rembert v. Evans,* 86 S. C., 455, 68 S. E., 659; *Burton v. Burton,* 113 S. C., 227, 102 S. E., 282.

The circumstances under which the testator was placed give strong indication that he intended his children by his third wife to be provided for as such and not as the heirs of the wife the life tenant. He had provided for the son of his first wife and for the grandson, the son of a deceased son of his second wife, without any limitations upon their titles, and it was natural that he should make some provision for his third wife and her children by him; he certainly did not intend, after limiting her interest to a life estate, to put it in her power to convey or incumber the land which he intended to go to his five children by her.

I think, therefore, that the decree appealed from should be modified as herein indicated.