15951

GREEN *ET AL.* v. GREEN *ET AL.*

(42 S. E. (2d) 884)

*Messrs. Royall & Wright* and *Emil T. Cannon,* all of Florence, for Appellant, S. Charles Green, Sr., cite:

*Messrs. R. R. Whitlock,* of Lake City, and *G. Badger Baker,* of Florence, for Respondents, cite:

May 27, 1947.

The order of Judge Lide, requested to be reported, follows:

This suit in equity was instituted for the purpose of procuring a judicial construction of a certain part of the will of John A. Green, deceased, relating to certain real estate in the Town of Lake City, county and state aforesaid, and for other incidental purposes, including the partition of the land in question, if the will should be construed in accordance with the allegations of the complaint. All proper parties are before the court. The defendant, S. Charles Green, Sr., has answered denying the construction of the will as set forth in the complaint and alleging a contrary interpretation. The infants have answered by their duly appointed guardian ad litem. All the other defendants have made default. There being no substantial controversy as to the facts, the cause was submitted to me by counsel for the respective parties upon the pleadings and the will in question, and after hearing full oral argument the same was taken under advisement.

John A. Green, late of the county and state aforesaid, died some time prior to October 31, 1916, leaving in full force and effect his last will and testament, dated October 31, 1912, which was duly admitted to probate on October 31, 1916, in the Court of Probate for Florence County. The will makes certain provisions for the maintenance and support of testator's widow, Aramintha Elizabeth Green, and his sister, Rebecca Simms, both of whom died in the year 1928, so that the testamentary provisions in their behalf now constitute no charge upon the estate.

The language of the will relating specifically to the property in question in the instant suit is as follows:

"At the death of my said wife I give, devise and bequeath unto my beloved daughter, Mary Aline;

"First. All and singular, my undivided right, title and interest in, to and out of all those certain lots of land situate on West Acline Avenue, in the Town of Lake City whereon are now situate the buildings occupied by the Smith-Williams Company, R. F. Taylor and Company, the Whitehead Drug Company and the Bank of Lake City, said interest being an undivided one-half interest therein as co-partner with my said executor Asbury H. Williams, M.D.;

"To have and to hold the same unto the said Mary Aline Green, free from all trust, for and during the term of her natural life at her death to be equally divided between the lawful issue of her body, and should she die without lawful issue of her body, then do I give, devise and bequeath the same unto my said two sons, John Otis and Samuel Charles, as tenants in common thereof, for and during the term of their natural lives and at their deaths to be equally divided between the lawful issue of their bodies, said issue to take per stirpes."

Mary Aline Green, testator's daughter mentioned in the foregoing excerpt from the will, was married to one Major, but subsequently died "without lawful issue of her body," and hence the property involved passed to the testator's two sons above mentioned, to wit, John Otis Green and Samuel

Charles Green (sometimes referred to in the pleadings as S. Charles Green, Sr.), *"as tenants in common thereof, for and during the term of their natural lives and at their deaths to be equally divided between the lawful issue of their bodies, said issue to take per stirpes."* (Emphasis added.)

Counsel for the plaintiffs contend that these words mean that John Otis Green and Samuel Charles Green each took a life estate only, with remainder over to their children in fee simple; while counsel for the defendants contend that each of them took an estate in fee conditional, sometimes called an estate in fee simple conditional.

If the will contained nothing more, by way of devise or bequest, than the quoted excerpt, or if the court were justified in construing the same separately from the other language contained in the will, there could be no doubt whatever, in my opinion, that a fee conditional estate was thereby devised. The word "issue", which is essentially the same as "lawful issue," is a word of extensive signification and generally embraces the whole line of lineal descendants to the remotest generation, in indefinite succession, who take by inheritance, and not as purchasers. Hence, ordinarily where an estate is devised or granted to a person for his natural life and after his death to his issue, the devisee or grantee, under the Rule in Shelley's Case, takes an estate in fee conditional. (And it will be remembered that the statute abolishing the Rule in Shelley's Case, Section 8802, Code 1942, has no application, since the will was executed prior to October 1, 1924.)

Unquestionably then, in my judgment, if the language above quoted from the will is construed according to the technical meaning of the words, it constitutes a devise in fee conditional, under the Rule in Shelley's Case, because the devise is for life and then to the lawful issue of the bodies of the first takers; indeed it would be a typical illustration of the operation of the time-honored rule. And the superadded words, "to be equally divided between the lawful

issue of their bodies, said issue to take *per stirpes,"* as appears from the authorities, are not in themselves sufficient to destroy the technical significance of the words of limitation.

See *Whitworth v. Stuckey,* 1 Rich. Eq. 404; *Simms v. Buist,* 52 S. C. 554, 30 S. E. 400; *Davenport v. Eskew,* 69 S. C. 292, 48 S. E. 223, 104 Am. St. Rep. 798; *Davis v. Dalrymple,* 163 S. C. 490, 161 S. E. 738; *Antley v. Antley,* 132 S. C. 306, 128 S. E. 31; and *Lucas v. Shumpert,* 192 S. C. 208, 6 S. E. (2d) 17.

But in the construction of a will the primary purpose of the court is to arrive at the intention of the testator as expressed in his will considered as a whole, and notwithstanding the use of technical terms, presumably employed in their technical sense, this intention must be given effect, unless contrary to some rule of law.

And, in arriving at the intention of the testator the court is governed by certain subsidiary rules which must always be kept in mind, to wit: (a) if the testator has used words that ordinarily have a technical significance, such as "heirs", "heirs of the body," "issue," "lawful issue" and the like, and these words are not otherwise defined or explained in the will, the court is required so to construe the will as to give effect to the legal meaning of such terms; (b) the fact that after the use of technical terms like "heirs" "heirs of the body," "issue," etc., there are super-added words such as those above quoted, the same standing alone would not abrogate the ordinary meaning of the words of limitation; (c) but these words of limitation may be, and are sometimes (indeed rather often), used by a testator in the non-technical or popular sense, and if it so appears from the terms of the will or instrument itself that this was the intention of the maker thereof, such intention will be given effect.

The following quotation from a recent work appears to be quite appropriate:

"The meaning expressed by the language employed in a conveyance is to be derived from reading such conveyance as an entirety. Each sentence or paragraph is a single element in one whole. It is reasonable to infer that their complimentary or modifying force upon each other was intended by the conveyor and this inference must be given effect by the construer * * *. So also the meaning of each clause or part of the instrument is to be determined in the light of all aid as to the intended meaning of words or phrases derivable from their uses elsewhere in the same instrument, or derivable from other dispositions contained in the instrument." Restatement of the Law, Property, Vol. 3, p. 1198.

However, our own cases lay down the controlling principle in language equally clear and unequivocal. One of these cases is that cited and relied on in the oral argument before me by counsel for the plaintiffs, to wit: *Rowe v. Moore,* 89 S. C. 561, 72 S. E. 468, 470, in which the well-considered decree of Judge Shipp (based expressly upon consideration of the *entire* will before him) was unanimously adopted by the Supreme Court. I quote the following brief excerpt from this decree:

" 'It is true that the rule in Shelley's case is still binding authority in South Carolina, but when it appears that the words "heirs," "heirs of the body," or "issue" are so qualified by additional words in the will as to evince an intention that they are not to be taken as descriptive of an indefinite line of descent, but are used to indicate a new stock of inheritance, the rule in Shelley's case does not apply.' "

It will be observed that the particular devise which was before the court in the case from which the foregoing excerpt was taken was contained in item ten of the will, while the qualifying or explanatory words upon which the court relied were in other items of the will; hence I quote the additional excerpt from Judge Shipp's decree:

" 'It is clear to my mind that the testator used the words "heirs of the body" in the sense of children in item three,

and it would be against reason to hold that the testator used the words "heirs of his body" in the sense of children in item three, and in other items of the same will, in making devises to others of his children, uses the words "heirs of her body" in any other sense than that of children.' "

It follows that if a testator after using the words apparently of limitation, which standing alone would delimit the quantum of the estate rather than designate the persons who are to take under the will, proceeds to define the meaning of the words used by him, or otherwise to indicate clearly in the will the meaning he attached to such words, then unless the purpose of the testator as thus disclosed violates some rule of law or some controlling principle of public policy, his intention as so expressed will be given effect, even though the result is to transform words technically of limitation into words of purchase, that is to say, into words designating the parties to take instead of the quantum of the estate. Hence, although the testator may use such expressions as "heirs," "heirs of the body," or "issue," which are usually words of limitation, a clearly expressed purpose on the part of the testator that such words shall be deemed to mean children will be given effect.

In the interesting case of *Guy v. Osborne,* 91 S. C. 291, 74 S. E. 617, the testator devised lands as follows:

" 'To my nephew, Samuel Blair, during his natural life, I give and bequeath in trust, and at his decease, I give and bequeath to his *surviving issue*   *  .*   *   my tract of land (describing the lands). But should my said nephew die without any *surviving issue of his body*   *   *   *   the said lands   *   *   *   *herein bequeathed to his children,* I allow to descend the one half to my nephew John B. Lowrey, or to his children; and the other half to the children of my half cousin, James Blair, senr.' " (Emphasis added.)

The court held that ordinarily the words "surviving issue" would have been construed as words of limitation, giving to the nephew a fee-conditional estate, but since the testa-

tor indicated by the quoted terms of his will that he used the expression "surviving issue of his body" as referring to the children of the first devisee, this meaning would be given effect, so that the nephew took only a life estate and his surviving children took the remainder to the exclusion of the children of a child who did not survive him. It is true that in this case the explanatory words were used in the same clause of the will in which the devise was made but the same rule applies where such words are found in other parts of the will, as will appear by reference to the case of *Rowe v. Moore, supra,* and many other authorities.

The law relating to this subject is so admirably and elaborately treated by the Court, in the opinion delivered by Mr. Justice Fishburne, in the rather recent case of *First Carolinas Joint Stock Land Bank of Columbia v. Ford,* 177 S. C. 40, 180 S. E. 562, 567, that a somewhat extended quotation therefrom will be much more illuminating than any discussion on my part of the numerous cases in point:

"In the case of *McWhite v. Roseman,* 114 S. C. 177, 103 S. E. 586, this court refused to treat the expression 'bodily heirs' as an expression of limitation under the rule in Shelley's case, because in other parts of the will the language used by the testator indicated that he used the word 'heirs' in the sense of 'children', rather than its technical aspect.

"This court has held that if a legal construction of the limitation demands the interpretation of indefinite succession, the intention of the donor is absolutely negligible, but that, if by any expression in the will, in a superadded clause or elsewhere, the question does not demand an arbitrary solution, but is open to inquiry, the intention so ascertained will when so construed annihilate the conception of indefinite succession, and fix the interests ot the remaindermen as direct donees of the testator's bounty, the stock of a new inheritance. That the superadded clause, or, in fact, any other portion of the will, may be resorted to for the purpose of ascertaining the intention of the grantor in this limited

particular is well established; not the intention of the testator as to how the estate should go, but as to the capacity in which the remaindermen should take, whether as heirs of the donee, or as direct objects personally of the donor's bounty. *Myers v. Anderson,* 1 Strob. Eq. 344, 47 Am. Dec. 537; *McLure v. Young,* 3 Rich. Eq. 559; *Smith v. Hilliard,* 3 Strob. Eq. 211; *McWhite v. Roseman,* 114 S. C. 177, 103 S. E. 586; *Pearson v. Easterling,* 104 S. C. 178, 88 S. E. 376; *Williams v. Caston,* 1 Strob. 130; *Ferril v. Talbot,* Riley Eq. 247; *Henry v. Stewart,* 2 Hill 328; *McCorkle v. Black,* 7 Rich. Eq. 407; *Brummet v. Barber,* 2 Hill 543; *Reeder v. Spearman,* 6 Rich. Eq. 88; *Rowell v. Hyatt,* 108 S. C. 300, 94 S. E. 113; *Guy v. Osborne,* 91 S. C. 291, 74 S. E. 617; *Carrigan v. Drake,* 36 S. C. 354, 15 S. E. 339; *Waller v. Ward,* 2 Speers 786.

"The latest case on this subject to receive the attention of the court is that of *First Carolinas Joint Stock Land Bank v. Deschamps,* 171 S. C. 466, 172 S. E. 622, 626, where will be found practically every authority cited in the circuit decree and in respondent's brief in the case at bar. In that case the court quoted with approval the following: 'It must not, therefore, be understood, says Mr. Jarman, that even the technical expression, "heirs of the body", is "incapable of control or explanation by the effect of superadded expressions, clearly demonstrating that the testator used those words in some other than their ordinary acceptation, and as descriptive of another class of objects'.—(2 Jarm. on Wills, 300.) Although a difference of opinion exists among Judges as to the word issue, yet, it seems now settled, that unless restricted by the context, this expression cannot be satisfied by applying it to descendants at a particular period. But if, from superadded expressions, or from the context, or from other parts of the will, it is manifest that the testator used the term as synonymous with 'children', or intended to describe a class of persons to take at a particular time, issue will be construed as a word of purchase, and not of limitation. And this rule is equally appli-

cable to every other expression used as synonymous with heirs of the body. Whenever the words 'heirs of the body' would be explained to mean some other class of persons, the same construction is given to synonyms, and the rule in *Shelley's case* does not apply.—(2 Jarm. 281.)"

"But we are 'carrying coals to Newcastle'. It is unnecessary to cite additional authorities; needless to take more books from the shelves."

In the present case the application of the rule in *Shelley's case* to create a conditional fee is not prevented by the words "to be equally divided", which relate to the devise of the remainder to the "lawful issue". Nor, probably, would the situation be affected by the additional general statement in the will that it is the testator's desire "to exclude any and all persons * * * save and except my said three children and the lawful issue of their bodies."

But in "Item IV" of the will the testator directs that the principal of his estate be handled by his executors and the profits divided, stipulating that the principal must forever remain intact until his children shall have accumulated an amount equal to their proportionate shares thereof, when it shall be paid over to them (and quoting) "* * * and upon failure of my said children, or any one, two or all of them, to so accumulate such a sum, then do I will and desire that the said principal be applied after their deaths to the support, maintenance and education of *such children, the lawful issue of their bodies,* as survive them until such *lawful issues,* and all of them shall have attained the age of twenty-one years, and *at that time to equally divide my entire estate that remains among and between my said grandchildren, the lawful issue of the bodies of my said three children."* (Emphasis added.)

In this provision of the will the testator thus states in simple English that in providing for a remainder interest in the "lawful issue" of the bodies of his children he is referring to the *children* of such children. He does so first by

specifically stating that those *"children"* are the class of persons who are considered by him as "the lawful issue" of the bodies of his children, and again (in the same paragraph) by requiring that when "such lawful issue" attain the age of twenty-one years, the "entire estate" that remains is to be equally divided among his "said grandchildren," who again are designated as "the lawful issue of the bodies" of his children.

Having thus twice declared in the clearest possible manner what he meant by the term "lawful issue of the body", is not the inference inescapable that these words or like words were used with the same meaning in all other parts of the will? Moreover, it is thus made apparent that one of the underlying purposes of the testator was to make provision for the children of his children, to wit, his grandchildren.

I have not overlooked the fact that "Item IV" above quoted from relates, at least primarily, to certain personal property, but it does not seem to me that this is in anywise material, in view of the specific language used *defining the term "lawful issue"*. And hence as hereinbefore indicated the words "lawful issue of their bodies" must be construed to mean the children of John Otis Green and Samuel Charles Green, respectively. The first takers therefore acquired a life estate only with a vested remainder in fee-simple in their children, respectively. Nor do the immediately superadded words in anywise affect this conclusion. The provision for an equal division was entirely consistent, although it was not intended that the lands should be equally divided among the children of the two sons of the testator taken together, but among their children, respectively, and this is doubtless the reason the clause, "said issue to take *per stirpes"*, was used. This conclusion is strongly fortified by the fact that similar language was used in the will wherever a like devise was made to two persons, but not where it was made to one person only. See devises made in paragraphs X and Y of the will. Indeed, it will be observed with

reference to the particular portion of the will now under consideration that the precedent devise to Mary Aline Green does not have these superadded words.

The excerpt hereinbefore quoted from the will refers to the testator's undivided right, title and interest in certain lots of land in Lake City, but after his decease the property was partitioned in an action instituted by the executors of the will against all proper parties, as will appear by reference to Judgment Roll No. 5928 in the office of the Clerk of this Court; and in consequence of the decree in this partition suit there was set apart to the beneficiaries under the will, and subject to the terms, conditions and limitations thereof, the property described as follows, which is the land in question in the instant suit, to wit:

"All that certain piece, parcel or lot of land situate, lying and being in the Town of Lake City, County of Florence, State of South Carolina, at the corner of Jones Street and West Acline Avenue, fronting on said West Acline Avenue a distance of approximately thirty-nine and three-tenths (39.3) feet and extending back in depth therefrom a distance of approximately one hundred twenty (120) feet, be the said measurements more or less, and bounded as follows: On the East by West Acline Avenue; on the North by Jones Street; on the South by lot of land of G. L. Sansbury and Son; and on the West by lands of N. R. Epps, now or formerly."

John Otis Green (referred to in the complaint as John O. Green, Sr.), one of the testator's sons mentioned in the quoted excerpt from the will, died in the year 1937; and his children, the plaintiffs, John O. Green, Jr., Enid C. Green, and Mary E. Green Dewees, were, as herein adjudged, vested in fee simple with an undivided one-half interest in the property above described; but Enid C. Green on February 6, 1945, conveyed to her mother, the plaintiff, Clyda C. Green, all of her right, title and interest in and to the said land, as will appear by reference to the deed re-

corded in Deed Book 99, at page 395, so that such un゛ ゛ide⸌ half interest is now owned in fee-simple by the p゛ ⸌ tiff , Clyda C. Green, John O. Green, Jr., and Mary E̦ Green Dewees, share and share alike.

Samuel Charles Green (referred to in the pleadin ⸌ as S. Charles Green, Sr.), has a life estate in the remaining undivided one-half interest in the property in question with vested remainder over in fee simple to his children, S. Charles Green, Jr., and Elizabeth Ann Green, and any other children that may hereafter be born to the said S. Charles Green, Sr.

It follows therefore that the plaintiffs would be entitled to a partition of the land in question as between them and the children of S. Charles Green, Sr. (except as to the plaintiff, Enid C. Green).

It also appears that on December 9, 1932, John O. Green, Sr., conveyed to S. Charles Green, Sr., the premises involved herein, and this deed was recorded July 20, 1938; but the same is now of no force or effect whatsoever, for the reason that as shown by this decree John O. Green, Sr., had only a life estate, which of course ceased and determined upon his death in the year 1937 as aforesaid.

(In paragraphs 9, 10 and 11 of the complaint certain alleged tax deeds involving the premises are set forth, it being alleged that the same are of no legal force or effect. And in paragraph 12 of the complaint it is alleged that the defendant Merchants Fertilizer Corporation has or may claim some interest in the premises by reason of a judgment against the defendant, S. Charles Green, Sr. However, there is no evidence before the court with reference to the tax deeds in question or to the judgment just mentioned. Hence this decree must not be considered as making any adjudication concerning the same.)

Accordingly, it is ordered, adjudged and decreed, that the plaintiffs, Clyda C. Green, John O. Green, Jr., and Mary E.

Green Dewees be, and they are hereby declared to be the owner in fee simple, share and share alike, of one undivided half-interest in and to the premises hereinbefore described; and that the defendant, S. Charles Green, Sr., be, and he is hereby declared to be the owner of a life estate in and to the remaining undivided half-interest in the premises with a vested remainder over in fee simple to his children, the defendants, S. Charles Green, Jr., and Elizabeth Ann Green, and any other children who may hereafter be born to the said S. Charles Green, Sr.

And it is further ordered, adjudged and decreed, that the plaintiffs shall have the right to apply to the court for such an order as may be necessary or proper to effectuate the partition of the premises as hereinbefore indicated; and that any party to the cause may apply at the foot of this decree for such other and further orders as are not inconsistent herewith.

PER CURIAM.

Upon consideration of the judgment of the Circuit Court in the light of the exceptions, the latter are found to be without merit and are overruled. The decree of His Honor, Judge Lide, is affirmed and will be published as the judgment of this Court.

FISHBURNE, STUKES, TAYLOR, and OXNER, J.J., concur.

BAKER, C. J., did not participate in the decision of this case.